RUTLAND TRANSIT CO. v. L. P. & J. A. SMITH CO. PRESIDENT AND DIRECTORS OF INS. CO. OF NORTH AMERICA v. SAME.
HOLMES v. SAME.

(Circuit Court of Appeals, Sixth Circuit.   December 2, 1913.)

Nos. 2370, 2371, 2372.

NAVIGABLE WATERS (§ 26*)—OBSTRUCTION BY PIER UNDER CONSTRUCTION—INJURY TO VESSEL BY COLLISION—LIABILITY.

Injury to a steamer in the night from collision with a crib under construction as an extension of the breakwater at Cleveland harbor *held* on the evidence, which showed that the contractors maintained a proper and sufficient light on the crib which was burning at the time, to have been due either to the failure of the vessel to keep an efficient lookout or to the fact that the smoke and fog were so thick that the light could not be seen from the vessel as she approached the entrance, for which in either case the contractors were not liable.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. § 26.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; Wm. L. Day, Judge.

Suits in admiralty by the Rutland Transit Company, by the President and Directors of the Insurance Company of North America, and by C. M. Holmes against the L. P. & J. A. Smith Company. Decree for respondents, and libelants appeal. Affirmed.

For opinion below, see 199 Fed. 640.

Charles E. Kremer, of Chicago, Ill., for appellants.

Harvey D. Goulder and Frank S. Masten, both of Cleveland, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. In the course of improvements to the harbor at Cleveland, the Smith Company, which had the construction contract with the United States, had erected a crib, the timbers of which projected above the water and the sloping stone substructure of which came nearly to the surface. This crib was about 1,000 feet out in the lake, approximately in line with one side of the opening in the existing breakwater, and it was a step in building a breakwater extension. The steamer Prince, which belonged to the Rutland Company, and whose cargo belonged to, or was insured by, the appellants in the other cases, suffered injury to herself and her cargo as she was endeavoring, in the nighttime, to go into the harbor. Three separate libels were brought against the Smith Company; the only fault alleged

---

being that the crib was not marked by a proper light. On final hearing the libels were dismissed, and the libelants bring these appeals.

In the shape which these records take, the questions involved are only questions of fact. If we assume, as for the purpose of this decision we may, that the injury was caused by the boat striking an integral part of the crib, the only vital further inquiry is whether a proper light was there maintained. The evidence shows without dispute that a lantern, of suitable size and shape and with a light burning therein, was upon the crib at the time of the accident. Libelants must stand, as they do, upon the theory that the light had become dim or the glass had become smoked to an extent which made the light an insufficient discharge of the Smith Company's duty in the premises. The testimony discloses that there was considerable fog and smoke settled down, which would lift and then close in again and would be different in different places, and at different times in the same place; and that this light was seen at about the time in question by many witnesses at varying distances and by several at a distance amply sufficient for due warning to the Prince, if she had seen it from the same distance. It comes to this: According to the weight of the evidence, it must be held that the light was sufficient, unless that conclusion is to be changed by the fact that the men on the Prince did not see it until after she struck. Under these circumstances, and regardless of original questions of burden of proof, it is clear that the burden rested on appellants to show that they did take all due care in the matter of a vigilant lookout for a considerable time before they reached the crib. A discussion of the evidence on this point would be unprofitable. It is enough to say that libelants do not successfully carry this burden, and our conclusion, from all the testimony, is either that the Prince would have actually received sufficient warning by the light, if a proper lookout had been kept, or that in that particular locality and at that time the smoke and fog were continuously so thick that a good and sufficient light could not have been seen. Either of these results is fatal to appellants' claims. Maintaining a vigilant lookout is essential (The Ottawa, 3 Wall. 268, 273, 18 L. Ed. 165; The Ariadne, 13 Wall. 475, 478, 20 L. Ed. 542); and the necessity of any warning, other than a light, is not alleged.

Libelants allege as a fault, in this same connection, that the contractor did not maintain, in connection with the light, a guard or watch, and rely upon the analogy of the decisions that it may be negligent not to maintain an anchor watch on a vessel at anchor. In re Eastern Dredging Co. (D. C.) 159 Fed. 541; s. c., 162 Fed. 860, 89 C. C. A. 550; The Starin (D. C.) 113 Fed. 419. If the light on the crib had gone out or was sufficiently proved to have become dim and inefficient, this question would be material; but the situation which we have recited does not establish any necessity for a watch or any harm from the lack of one.

Libelants further contend that from the direction in which the Prince was approaching, the light was obscured by some upright timbers on the crib. The construction indicates that there might be some such obscuration, probably temporary and trifling, but that the light was really

so hidden is only a surmise. It has no proof to support it, except the fact that the light was not seen from the Prince, and this fact loses any controlling significance when put in connection with the further fact that the Prince's lookout was, much of the time, engaged in other duties.

The decree in each of the three cases is affirmed, with costs.