### THE PRUDENCE et al.

(District Court, S. D. New York. July 13, 1903.)

1. COLLISION—SAILING VESSEL AND BARGE IN TOW—FAULT OF TUG.
   A tug with three barges in tow on a long hawser *held* in fault for a collision in the night in Delaware Bay between the rear barge, which was 460 fathoms behind, and a meeting schooner, which was at the time tacking, and on a crossing course, for her failure to keep a lookout, and for not taking any measures to avoid the schooner, rendered especially necessary by the length of her tow. The schooner, which had a vigilant lookout, and held her course until collision was inevitable if it was continued, *held* not in fault.

In Admiralty. Suit for collision.

Owen & Sturges, for libellants.
Carpenter, Park & Symmers, for the Prudence.

ADAMS, District Judge. This action was brought by the libellants, the owners of the Schooner William D. Marvel, against the Steamtug Prudence, to recover the damages suffered by them from a collision, which occurred in Delaware Bay about 1.30 o'clock in the

morning of the 14th of August, 1902, between the schooner and the barge Drifton in tow of the Prudence. The schooner was bound from Boston to Philadelphia, laden with empty barrels, and the Prudence, with three barges in tow tandem, laden with coal, was bound from Philadelphia to New York. The first barge was about 200 fathoms astern of the Prudence, the next about 130 fathoms astern of the first barge, and the last, the Drifton, was about the same distance astern of the second barge. The night was clear. The tide was ebb. The wind was strong from the north northeast. The exact place of the collision is in dispute but it admittedly occurred a short distance above the Breakwater. The schooner's general course was north northwest and the tug's south southeast.

The libel alleges that the tug's three towing lights were discovered bearing off the schooner's port quarter while the schooner was on her port tack; that when the schooner had reached the Over Falls, on the Cape May side of the Bay, it became necessary for her to tack and the tug's lights then bore off the starboard bow; that the tug's red light and the red lights of two barges were discovered but no lights were seen on the other barge until shortly before the collision; that when the tow had approached in such close proximity to the schooner as to make a collision inevitable if the schooner continued her course, the schooner's wheel was hove hard to port and the head sheets raised, those being the only things that could be done to prevent a collision, but as the sea was choppy and the wind was baffling, the schooner failed to come around but lay head to the wind, making no headway; that the tug continued on until finally the Drifton came into collision with the schooner, the latter's jib-boom being carried away by the foremast of the barge and some slight damage done to the barge. The schooner charges the tug with fault in not having a vigilant lookout, in not altering her course and that of the tow to pass under the schooner's stern on her starboard side and in making no attempt to avoid the collision.

The answer of the tug alleges that when she was about half way between the Brandywine Flash Light and the Lightship and steering for the latter, the schooner was observed crossing the bow of the Prudence about a half a mile away and heading apparently about east; that at this time, the speed of the Prudence did not exceed three miles per hour over the bottom; that the schooner was then on her port tack and was upon a course away from and clear of the course of the Prudence; that the schooner then disappeared from view; that shortly thereafter, the schooner's red light was seen three or four points upon the port bow of the Prudence and it was observed that she had come about upon her starboard tack, and was apparently heading in about the opposite direction from that of the tug and tow, so that the courses of the vessels were not such as to involve any risk of collision if the schooner maintained her course; that after the tug had passed the schooner, the latter was seen to come into the wind but failed to go about and paid off under full sail towards the last barge in the tow and shortly thereafter they came together; that when it was observed by those on the tug that there was danger of collision between the schooner and the Drifton,

the engines of the tug were slowed; that previous to the collision the Drifton changed her course to the starboard so that at the time of the collision, her red light only was in view to those on the tug; that at the time of the collision the schooner was still paying off and headed for the barge at nearly right angles. The tug charges the schooner with fault (1) in not beating out her starboard tack, instead of going about on her port tack; (2) in not casting anchor when she missed stays; (3) in not having an efficient lookout; (4) in failing to observe the red light of the Drifton, which was a regulation light and burning brightly.

The testimony substantially supports the contention of the libellants. It appears that the schooner had a competent lookout properly stationed and that the lights of the tug and of the first two barges were duly seen and reported. The lights of the Drifton were not seen until the vessels were almost in the jaws of the collision and as a vigilant watch was kept on the schooner and no testimony has been produced from the Drifton, or the other barges as to the light, I conclude that it was defective. In any event, it only bears upon the question whether the schooner should be held in fault so as to effect a division of the damages.

There can be no doubt about the fault of the tug. She was bound to keep her tow clear of the schooner's course and it was the duty of the schooner to keep her course until it could be plainly seen that by doing so she was running into a collision. The Maverick (D. C.) 75 Fed. 845; Id., 84 Fed. 906, 28 C. C. A. 562. Admittedly, the tug did not change her course to avoid the schooner, nor reduce her headway until a collision was imminent. The schooner was seen to cross the course of the tug on her port tack some distance away and then passed out of view. When again seen from the tug, she was on her starboard tack, showing her red light and about three fourths of a mile away. The navigator of the tug incorrectly supposed that the schooner was not approaching the tow and that by keeping her course, she would avoid it. The tug contends that the schooner was three points on the tug's port bow when she was seen on her starboard tack but this is doubtful. The wind was not exactly steady but was in a general north northeasterly direction. The schooner could not sail nearer the wind, than five or six points, and necessarily proceeded on a course northwest by north or northwest. As the tug was going south southeast, the courses were somewhat crossing, instead of being opposite, and a collision would ensue if both vessels kept their courses, unless the schooner was a considerable distance to the windward of the tug and tow, especially in view of the length of the tow and of the fact that the tide set the schooner somewhat to the westward. The testimony on the schooner's part shows that when on the starboard tack, she was sailing by compass, as steadily as practicable, on a course between northwest and northwest by north, until the Drifton was made out and there was danger of collision. The circumstances show that the schooner was not far enough to the windward of the tug and tow to avoid the latter by keeping her course. There certainly can be no just criticism upon the schooner for not beating out this tack. As for the port tack,

the testimony of the schooner shows that she went as far as she prudently could towards the Over Falls Shoals before she went about on her starboard tack. Then, as I have said, the starboard tack course was kept until danger appeared from the third barge. In endeavoring to avoid this danger, and when in extremis, the schooner attempted to tack again and missed stays, apparently without any remissness on her part, as the wind was baffling; certainly without legal fault being attributable to her in view of her situation. While in this condition, she was set towards the tow by the wind and tide and the collision occurred. The primary cause of the collision, was the neglect of the tug to shape her course so that the schooner would not collide with the tow. This the tug could do in any way she wished, so that the result should be accomplished, but apparently the prudent way for her to navigate was to starboard her helm when the schooner was made out on her own port bow and pass the schooner starboard to starboard.

The tug had no lookout especially assigned to that duty. It is claimed that the mate, who was in charge of the navigation, was standing outside the pilot house acting as lookout but his other duties absorbed his attention to a certain extent and it is evident from the fact that he did not observe the schooner when she first came about on her starboard tack, not very far distant, that he was not vigilantly performing a lookout's duty.

The tug was in fault for not avoiding the schooner, for not having a lookout and for not stopping and reversing in time to avoid the collision. There is no evidence that if the schooner had anchored, the collision would have been avoided, and I find no fault upon her part.

Decree for the libellants, with an order of reference.