THE PRUDENCE.

O'KEEFE et al. v. TICE et al.

(Circuit Court of Appeals, Second Circuit. December 12, 1904.)

1. COLLISION—SCHOONER AND BARGE IN TOW—FAULT OF TUG.

A tug with three barges in tow on a long hawser, the last being 600 fathoms behind, *held* solely in fault for a collision in the night, in Delaware Bay, between the last tow and a meeting schooner, which was at the time tacking and on a crossing course, on the ground that, although the schooner's lights were seen half an hour before, when she was approaching on the other tack, no proper lookout was kept for her return, and no measures taken to avoid collision when she was seen again.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, holding the steam tug Prudence solely in fault for a collision between the schooner William D. Marvel and the barge Drifton in tow of the tug. The opinion of the District Court is reported 124 Fed. 939.

Samuel Park, for appellants.

E. L. Owen, for appellees.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The schooner was beating into Delaware Bay through the entrance between the Breakwater and Overfalls

Shoal. The tug was towing three barges tandem out to sea, the Drifton being the last in order, with 200 fathoms of hawser between the tug and the first barge and 150 between the several barges, a total of 500 fathoms of hawser plus the length of the barges. The District Judge has stated the facts very fully, and reference may be had to his opinion for a narrative of what took place as given by both sides. 124 Fed. 939. It is erroneously stated therein that the tide was ebb, instead of flood, as both parties here agreed. Moreover, if the statement in the opinion that when the schooner was on her last starboard tack before collision she showed her red light to the tug is to be taken as a finding of fact, instead of a statement of what the tug contended to be the fact (the text is not entirely clear), we think it is erroneous. The reasons which induce us to affirm the decision may be briefly stated. The night was good for seeing lights. The schooner saw the tug when she was coming in past the lightship on her first starboard tack. The tug saw the schooner while the latter was on her port tack from the Breakwater over towards the Overfalls Shoal, more than 15 minutes before she came about on her second starboard tack. Both vessels were navigating in plain sight of each other's lights, each knowing of the other's presence, and with plenty of sea room. Under these circumstances improper navigation must have been the cause of the collision. Inasmuch as the rules required the schooner to hold her course and the tug to keep her tow clear of that course, while in fact the schooner did hold her course until in the jaws of collision, she tried to come about, and missed stays, encountering the Drifton, which was actually in her course, it would be natural to find that the improper navigation was by the tug, which failed to haul the Drifton clear of that course. In defense it is urged that the schooner failed to avoid obvious danger, and misled the tug as to her course till it was too late for the tug to keep her tow out of that course. It is charged that the schooner failed to keep a proper lookout. The evidence, however, fails to sustain this charge. The schooner saw the tug long before the collision, saw her repeatedly, the lookout reported her, and the navigating officers made out her lights, and therefore knew she had more than one vessel in tow, and that the length of the tow exceeded 600 feet. They also made out the lights on two of the barges. In the face of such testimony it cannot be held that there was any failure by the schooner to maintain a careful lookout. The fact that no one on the schooner made out the third barge or her lights until too late to avoid her is not persuasive to the contrary in view of the circumstance that there is no evidence that the Drifton's lights were sufficient, while there is evidence of their dimness.

The main contention for the defense is that after the schooner had crossed the bows of the tug, standing to the eastward on the port tack, she failed to run her tack out and came about too soon, thus improperly embarrassing the tug. The schooner's explanation is that she was as close to the Overfalls Shoals as her navigator thought it prudent to go. It is not necessary to determine whether this be so or not, and the testimony, read in connection with the chart, would seem to indicate that she might have stood on further without risk of stranding. A sailing vessel, even with abundant sea room ahead, is not bound to run out

her tacks when navigating in the vicinity of another vessel. In The Coe F. Young, 49 Fed. 167, 1 C. C. A. 219, this court said:

"The sloop was entitled to assume that the tug was navigating with a proper lookout, and with reasonable attention to the obligations laid upon her. If, under that assumption, the sloop's maneuver was not calculated to mislead or embarrass the tug, it is immaterial whether or not she ran out her port tack. The testimony shows that she had gone about and filled upon the starboard tack before collision. The disputed question is whether there was abundant time and space to enable the tug, seeing her maneuver, to keep out of the way."

And we held the tug liable because the sloop had sailed on her new tack a distance which gave the tug ample time to conform her own navigation to the sloop's course, if she had seen the latter come about as she should have done. In the cause at bar the navigator of the schooner did not come about immediately after crossing the tug's bow. According to the testimony of those on the tug he held on for 15 minutes longer, till he ran out of their sight, and it was 10 or 15 minutes after that when they saw him coming back on the starboard tack. He ran so far to the eastward that, when he did come about, his new course, without the slightest assistance from the tug, carried him so far astern of her that he would easily have cleared the second tow, which, because of the insufficient light on the Drifton, was the last one he expected to find. The propriety of his navigation is to be tested by the conditions under which it was decided upon. He was not in fault for not making out the lights of the Drifton before he came about. He was far enough to the eastward to clear all he had seen, or had reason to expect, and he was entitled to rely on assistance from the tug as soon as his new course was taken. The navigator of the tug did not see the schooner come about. How long afterward it was before he again picked her up is not entirely clear. His navigation, however, is to be tested by what he was bound to expect. He knew she was beating in, and that there were shoals to the eastward, which might be expected to set her on the starboard tack again. On a night such as this her lights could have been seen soon after she was on the new course. The tug's course was known. The northerly limit of the schooner's course beating up on a wind not exactly steady, but blowing freshly from a general north-northeasterly direction, was reasonably inferable. If the enormous length of the tow made it doubtful whether the schooner could clear it while holding her new course, it was for the tug to shape her own course so that the schooner would not collide with the tow. The witnesses for the tug undertake to show that when the schooner was sighted on her new course there were no indications of danger; that both vessels were red to red, and moving on substantially opposite courses. In our opinion, the weight of evidence is to the contrary. The witnesses from the schooner all testify that after they got about, and shaped the new course, the tug was on their starboard bow, and thus red to green. Moreover, it is very evident that the vessels were not on opposite courses with that wind. Putting them on crossing courses (remembering that the tug concedes that when the schooner was seen again on her new tack she was still on the port bow of the tug), it will be found that after the change of course the schooner's green light must have been exhibited to the tug, and the

navigation of the latter should have been conformable thereto. We concur with the District Judge in the conclusion that a "prudent way for her to navigate was to starboard her helm when the schooner was made out on her own port bow, and pass the schooner starboard to starboard." If they saw her green light, and failed to make this change, their navigation was faulty. If they failed to see the green light because after she had passed to the eastward on the port tack they gave themselves no more concern about her whereabouts, and therefore kept no lookout for her return, they were careless in that respect.

The decree of the District Court is affirmed, with interest and costs.