## THE GLADYS.

### TOOKER et al. v. PHILADELPHIA & R. RY. CO.

(District Court, S. D. New York. February 23, 1905.)

1. COLLISION—SUIT FOR DAMAGES—EFFECT OF FAILURE TO PRODUCE TESTIMONY.

The failure to take the testimony of those navigating a tug, in a suit for collision between her tow and another vessel, tends against her, in the absence of equivalent testimony.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 258.]

2. SAME—TUG WITH LONG TOW—CARE REQUIRED.

A tug navigating the ocean at night, with three tows on a single line, the whole 4,000 feet in length, is to be regarded as one vessel, and is required to exercise extreme care to avoid collision with crossing vessels.

3. SAME—TUG WITH LONG TOW AND CROSSING SCHOONER—FAULT OF TUG.

An ocean tug, with three barges in tow in a line, the whole being some 4,000 feet in length, held in fault for a collision between one of the barges and a schooner on a converging course off Barnegat, N. J., in the night for failure to exercise the care to keep out of the schooner's way required of her in view of the great length of her tow. The contention of the tug that the schooner was an overtaking vessel, and so required to keep out of the way of the tow, held not sustained by the evidence.

In Admiralty. Cross-suits for collision.

James Armstrong and Pierre M. Brown, for Philadelphia & R. Ry. Co.

Wing, Putnam & Burlingham, for the Gladys.

ADAMS, District Judge. The first of the above entitled actions was brought by the Philadelphia & Reading Railway Company, the owner of the barge Oak Hill, to recover from the schooner Gladys, the damages caused to the barge by a collision, which occurred between those vessels on the 24th day of August, 1904, about 10:15 o'clock P. M., off Barnegat, New Jersey. The second action was brought by the owners to recover the schooner's damages in the collision.

The Oak Hill was being towed, in company with two other barges, the Phœnix and Buck Ridge, by the Philadelphia & Reading Company's tug Carlisle from Philadelphia to points East of New York. The length of the tug was 173 feet. The hawser between the tug and the first barge, the Phœnix, was from 180 to 200 fathoms; between the Phœnix and the Oak Hill, it was about 175 fathoms, and between the Oak Hill and the Buck Ridge about 160 fathoms. The barges were each about 196 feet long. The whole tow was about 4,000 feet in length. The barges were loaded with coal. They all had sail set and drawing at the time of the collision.

The Gladys was a three masted schooner, 163 feet long. She was bound from Savannah, Georgia, to New York, with a cargo of lumber, under and on deck. The deck cargo was about 7 feet high. The schooner had all her sails set, excepting the fore and main topsails, which had been furled to delay her arrival in New York until the next morning.

The weather was warm and exceptionally fine, with a full moon. The sea was smooth. It had been quite calm during a part of the day.

The tug and tow passed Barnegat Light, some 5½ or 6 miles distant, about 7:30 o'clock P. M. and laid a course of N. E. ¼ E. for Fire Island Light. Her speed was probably in excess of 6 knots per hour.

The schooner, after being becalmed until about 4 o'clock in the afternoon, obtained a slight breeze from the S. W. and made about 8 knots on a N. by W. ½ W. course, up to about 8 o'clock. The wind then veering more to the westward, she steered N. N. W., and, the wind increasing, made somewhat better speed, probably about 3½ knots, until just before the collision, when it was greater, probably about 5 knots. About 8:30 o'clock P. M. the lookout reported a light to windward. It was in the neighborhood of 5 miles away, and turned out to be on the Carlisle. Both vessels kept their courses until in the extremity of collision, when the schooner put down her helm and she shortly thereafter, about 10:15 or 10:20, collided with the Oak Hill. Both vessels were seriously injured and the question of liability is to be determined.

The tug contends that the schooner was first observed on the starboard beam of the Oak Hill, overtaking the tow, that when she reached a point not quite abreast of the first barge, she attempted to go about on the other tack, with the result that her bow struck the barge and she was in fault because, being an overtaking vessel, she did not keep out of the way of the tug and tow.

The schooner denies that she was an overtaking vessel and contends that the tug was going faster and the vessels being on converging courses, it was the tug's duty to avoid the schooner by passing under her stern.

The tug and barges must be regarded as one vessel and as such required to exert the utmost prudence. The Samuel Dillaway, 98 Fed. 138, 38 C. C. A. 675.

The schooner's testimony shows that towards the end and just before the collision, she was, according to some estimates, sailing nearly, if not quite, as fast as the tow was going, but it does not seem that she was ever an overtaking vessel under Art. 24 of the International Rules, which provides:

"Art. 24. Notwithstanding anything contained in these rules every vessel, overtaking any other, shall keep out of the way of the overtaken vessel.

Every vessel coming up with another vessel from any direction more than two points abaft her beam, that is, in such a position, with reference to the vessel she is overtaking that at night she would be unable to see either of that vessel's side-lights, shall be deemed to be an overtaking vessel; and no subsequent alteration of the bearing between the two vessels shall make the overtaking vessel a crossing vessel within the meaning of these rules, or relieve her of the duty of keeping clear of the overtaken vessel until she is finally past and clear.

As by day the overtaking vessel can not always know with certainty whether she is forward of or abaft this direction from the other vessel she should, if in doubt, assume that she is an overtaking vessel and keep out of the way."

All the testimony taken on behalf of the tug was from the Oak Hill and it was agreed in court that the testimony of the wheelsmen of the other barges, if called, would corroborate the Oak Hill's contention, but no testimony whatever was taken from the tug and from the omis-

sion to examine the witnesses who were charged with the duty of navigation on her part, it must be presumed that if produced, they would not have aided their vessel. The omission, in the absence of other equivalent testimony, tends against the tug. The New York, 175 U. S. 187, 204, 20 Sup. Ct. 67, 44 L. Ed. 126.

The testimony taken on behalf of the tow is to the effect that the schooner was first seen about abeam of the Oak Hill and worked forward so that she nearly reached the tug. Even if that were so, she was not an overtaking vessel within the rule and it was still the tug's duty to avoid her and doubtless the best way for her to have done so was by going under the schooner's stern. The Prudence (D. C.) 124 Fed. 939, 942, affirmed December 12 1904. We have not the tug's testimony, so can not determine from her point of view how far abaft her own beam the schooner may have been at any time, but regarding the tow as one vessel, some two-thirds of a nautical mile long, the schooner was certainly never, after the vessels sighted each other, two points abaft the beam of such vessel.

There has been some discussion in the case as to the propriety of the schooner's movement to port instead of to starboard, in the endeavor to avoid collision, when it became evident that the tug was proceeding without regard to her, but there is a conflict of testimony upon the point, the schooner contending that it was the best course to pursue under the circumstances and the tow that it was imprudent navigation. The testimony rather weighs in favor of the schooner's contention but it is not necessary to determine the question as, in any event, the manoeuvre was made in extremis, brought about by a failure on the tug's part to fulfil her duty.

The libel of the Railway Company is dismissed and that of Tooker et al. sustained, with an order of reference.