## THE SURF.

### (District Court, D. Massachusetts. August 5, 1915.)

### No. 1092.

**1. COLLISION ☞91—STEAM AND SAILING VESSELS MEETING—FAULT.**

The steam trawler Surf, passing out from Boston Harbor on a clear and calm night in about the middle of the main channel, came into collision with and sunk the fishing schooner Perry, which was coming in under sail on a substantially opposite course. The lights of both vessels were burning, and those of the steamer were seen by the Perry when a considerable distance away; but the Perry's lights were not seen on board the steamer until shortly before collision. All members of the watch on the Surf, including the lookout, were in the pilot house, in front of which was a large mast, although there was a lookout station forward. *Held*, that the Surf was in fault for not having a properly stationed lookout, for failing to keep a proper lookout, and for negligently failing to observe the Perry seasonably; that the Perry was not in fault, it appearing that she kept her course until immediately before collision, when the captain attempted to throw her head around to avoid it.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 187-192; Dec. Dig. ☞91.]

**2. COLLISION ☞125—CONTRIBUTORY FAULT—MEASURE OF PROOF.**

A claim by one of two vessels in collision, whose own fault is established, of contributory fault on the part of the other vessel, must be proved by a preponderance of the evidence.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 266-279; Dec. Dig. ☞125.]

In Admiralty. Suit for collision by Joseph Cabral and others against the steamer Surf. Decree for libelants.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for libelant.

Warner, Warner & Stackpole, of Boston, Mass., for claimant.

MORTON, District Judge. This is a libel to recover damages for injuries to the fishing schooner Annie E. Perry, caused by a collision with the steam trawler Surf, which occurred near the entrance to Boston Harbor, between 12 and 1 o'clock a. m. on October 20, 1914. It was a clear, starlight night, with no moon. The Perry sank within a few minutes after the collision, but was subsequently raised and repaired.

The Perry was a two-masted fishing vessel of the usual type, about 97 feet long, not equipped with power. She was coming into the port of Boston on the night in question loaded with fish. The wind died down, as she approached the entrance to the harbor, to a light air from the north or north-northeast. The sea was smooth, with some swell. The Perry was carrying all four lower sails, namely, mainsail, foresail, staysail, and jib. Her lights were properly set and burning. She had on deck three men on watch forward, a man at the helm, and the captain, who was in charge of the navigation of the vessel.

The Surf is a steam trawler about 120 feet long. She had a whaleback forward deck, on which is a small railed-in place affording a posi-

tion, although not a secure one in heavy weather, for a lookout to stand. It was safe enough for a lookout on the night in question. She carried an unusually large foremast, which was used in the work of trawling. Her pilot house was in the rear of the foremast and was somewhat higher than the bow. Her speed was about 9 knots per hour. She was equipped with proper lights, which were brightly burning. She left Boston on the night in question a little after 11 o'clock and proceeded down the harbor. Her entire watch, consisting of her captain, Doyle, her mate, Campbell, a lookout, Drone, and a helmsman, Sorenson, was in the pilot house. There was no lookout on the forward deck. The navigation was in charge of the captain, who stood at the starboard window of the pilot house. The lookout was standing behind him, looking over his shoulder. The mate was standing at the middle window of the pilot house; and the helmsman, who was watching the binnacle and the course, was behind the port window of the pilot house. The view of all these men was, to some extent, obstructed by the foremast directly in front of them. Drone, who was charged with the duties of lookout, had to look past the captain, through the window at which the captain was standing. The captain was using field glasses from time to time, in an effort to make out Boston Lightship. The man who seems in fact to have been performing the duties of lookout was the mate, Campbell.

[1] The account of the collision given by witnesses on the schooner is substantially as follows: They were proceeding nearly due west about in the middle of the channel into Boston Harbor. They noticed some distance off an approaching steamer, which subsequently turned out to be the Surf. It was apparently headed straight toward them; they saw both its side lights. As it drew near, it became apparent that the steamer's course was bringing her very close to the Perry. All hands on deck on the Perry were aware of the steamer's presence, and most of them were observing her as closely as their positions enabled them to. They testified, in substance, that when the steamer was close at hand she changed her course towards them, and struck the Perry near her fore-rigging on the port side. After the steamer had changed her course so as to head into them, the captain of the Perry rushed to the wheel and turned it, so as to throw the schooner's head to port, in the hope of avoiding the collision which was imminent. Aside from this, the testimony of the schooner's crew is that no change in her course had been made for some time before the collision. Their evidence is that the steamer came directly out through the main channel from the Narrows Light, about in the middle of that channel, and that the collision occurred about half way between Boston Light and Point Allerton buoy. The Perry went down a short distance north of that buoy and to the south of the middle of the channel.

The steamer's account of the collision is as follows: She proceeded down the channel and turned eastward near the gas buoy on the south side of the entrance to it. From this point, some of the evidence given on her behalf differs radically from that of the schooner's crew. The steamer's captain and helmsman testify that she did not come straight out through the main channel, but, on the contrary, went to the north

of Nash's Rock, and passed between it and Boston Light. After passing Nash's Rock, they say that her course was changed for Boston Lightship; that she was running on that course, having passed Boston Light, when they saw a green light slightly on their starboard bow; that the steamer's course was thereupon changed one-half a point to the north, in order to give the greater clearance to the other vessel, which was judged to be, when first seen, about a quarter of a mile away; that very shortly after this change in the steamer's course the green light disappeared, and a red light appeared in the same place; and that the vessels were then very near together. The captain of the steamer says that he judged that the other vessel, which he supposed to be a sailing vessel, had changed course directly across his bow; and he ordered the helm of the Surf hard-aport and reversed the engines in an effort to go astern (i. e., to the southward) of the other vessel. The maneuver was unsuccessful, and the collision followed.

This testimony places the collision a considerable distance to the north of where the schooner's witnesses say it took place, and of where the Perry sank. No good reason is suggested why the steamer should take such a devious course from the Narrows Light to the Boston Lightship. Her natural way would be straight out through what is unquestionably the main channel. All the men on the schooner say that they saw the steamer take that course, and they are corroborated in this by the testimony of the mate of the steamer, Campbell, and by such inferences as to the place of collision as are afforded by the location of the wreck. Campbell testifies that the Surf passed perhaps one-half or three-quarters of a mile from Boston Light, pretty nearly in mid-channel, between Boston Light and Point Allerton. If so, the place of collision must have been substantially as testified by the crew of the schooner; and the testimony of Doyle and Sorenson on this point is quite inaccurate. Drone, the steamer's lookout, did not testify as to her course out of the harbor. How far the Perry moved from the place of collision before sinking does not clearly appear. The Surf did not keep her nose into the cut after the collision, and, although she endeavored to keep near the schooner, it is not claimed that she was in continuous contact with her, or pushed her any great distance. It is more likely that the schooner sank near where the collision occurred than that she was pushed or drifted 600 or 700 yards in a direction slightly west or south before going down.

It seems to me that in all probability the steamer did come straight out, as the witnesses on the schooner testify, and that the collision occurred substantially where they state; and I so find.

It devolved upon the steamer to keep clear of the schooner. The reasons advanced to excuse her not having done so are that the Perry's red light was obscured by her head sails, and that she suddenly changed course across the Surf's bow. The two vessels were proceeding nearly in the middle of the channel, one about west, the other about east, headed almost directly at each other. Both the schooner's lights should have been visible from the steamer for a distance much greater than the quarter of a mile which separated the two vessels when Captain

Doyle says he first noticed the Perry's green light. Sorenson says that he saw the green light at the same time; but neither Campbell, who stood at the front window, nor Drone, who was on lookout, observed it at any time. All four testify to having seen a red light just before the collision. Drone says he saw it almost dead ahead, a little on the Surf's port bow, which is consistent with the testimony of the schooner's men. There is no direct evidence that the Perry's head sails were of such size and so trimmed as to obscure her red light on the night in question; and there is direct evidence to the contrary. The contention that that light was obscured rests only on the fact that it was not seen on board the Surf. There is testimony that no change had been made in the placing of it, or in the size and rigging of the head sails on the schooner, for a number of years, nor (except for necessary repairs) since the collision, and that her lights, sails, and rigging were proper. The head sails certainly did not obscure both the Perry's lights at the same time. Her green light was, I think, visible from the Surf for a considerable distance; but there is no claim that it was noticed on the Surf until close at hand.

To a man standing in the middle window of the Surf's pilot house, her foremast cut off the view for a substantial angle on each side of the bow. If the schooner were proceeding straight up the middle of the channel, as her crew says that she was, and the steamer were proceeding straight down the middle, as her mate implies, and as the schooner's crew testify, the two vessels being headed almost directly towards each other, it is by no means impossible that the schooner's lights within the arc were cut off from Campbell's and Drone's vision by the foremast. This was Campbell's own suggestion in his testimony before the inspectors, and is by no means inconsistent with Drone's evidence, although other things would adequately explain Drone's not seeing the lights of the Perry. He was improperly placed for a lookout; he should have been on the forward deck. Eastern Dredging Co. v. Winnisimmet Co. et al., 162 Fed. 860, 861, 89 C. C. A. 550. If Captain Doyle was using field glasses in an effort to locate Boston Lightship, there is in his case an additional reason why he might have failed to see the schooner's lights until the vessels were so close together that there was already danger of collision.

The first order given by Captain Doyle after becoming aware of the proximity of the Perry was either "starboard" or "hard-astarboard." The three other men in the pilot house all "jumped" to the wheel to execute it; probably before the wheel had been thrown hard over, order "steady" and "hard-aport" were given. This last one had not been fully executed at the time of the collision. This testimony from the steamer's crew strongly suggests that an emergency had already arisen at the time when the schooner was first discovered. Upon all the evidence, it does not seem to me that the mere fact that the Perry's red light was not seen from the Surf on the night in question is sufficient to establish that it was obscured by her sails. It seems to me probable, and I find, that the failure to notice the schooner was due, either to neglect on the part of the men on lookout on the steamer, or to the fact that they were behind the steamer's

mast and it happened to come directly between them and the lights of the schooner. The New York, 175 U. S. 187, 204, 20 Sup. Ct. 67, 44 L. Ed. 126.

[2] The remaining question is whether the Perry changed course at the last moment across the steamer's bow, and thereby brought about the collision. The charge that she did so rests upon the testimony of Doyle and Sorenson. Such an assertion, made on behalf of a vessel whose own fault is established—it is, I think, clear that the Surf was at fault in respect to her lookout—is regarded with suspicion and must be proved by a preponderance of the evidence. Haney v. Baltimore Steam Packet Co., 23 How. 287, 291, 16 L. Ed. 562. No sufficient reason has been suggested why the schooner, which was coming into port with a fair wind, should suddenly change course in a direction away from her destination. Doyle does not claim that the schooner was becalmed; if she was, it was plainly the duty of the steamer to give her sufficient clearance to allow for involuntary movements caused by the swell. The accuracy, at least, of Doyle's and Sorenson's testimony, is seriously impaired by their misstatements concerning the course of the steamer and the place where the collision occurred. I am not prepared to accept their testimony, contradicted as it is by all the witnesses on the schooner, and unsupported by the evidence of Campbell and Drone, who were in the pilot house, that there was a change of course on the part of the schooner. If, as testified by some witnesses who were on the steamer, the vessels came together almost head on, the schooner's bowsprit ranging along the port side of the steamer, and the steamer striking the schooner on the "bluff of the [port] bow," the details of the collision tend to support the schooner's account of it. If, as testified by various witnesses on the schooner and some on the steamer, the angle between the two vessels were considerably wider, it would be explained more easily on the supposition of a change of course by the schooner. The exact details of the way in which the vessels came together seem to me not sufficiently certain to justify following inferences based upon them in disregard of the evidence referred to.

I find and rule that the Surf was at fault in not having a man on lookout stationed for that duty, in failing to keep a proper lookout, and in negligently failing to observe the schooner seasonably. The management and discipline of the steamer appear to me to have been lax, and her handling after the emergency arose to have been unskillful, although, considering the wide latitude of action allowed in an emergency, it would perhaps be unduly severe to hold her at fault in this particular.

I find the schooner Annie E. Perry to have been free from fault, and that the collision occurred solely by reason of the faults of the steamer Surf.

Decree for libelants.