### THE POWHATAN.

### THE TELENA.

#### (District Court, E. D. Virginia. December 21, 1917.)

COLLISION ⊜⊐39—STEAM VESSELS MEETING—FAULT.

A collision at night between the meeting steamships Powhatan and Telena in a 500-foot channel in lower Chesapeake Bay *held*, on the evidence, due solely to the fault of the Powhatan, outbound, in crossing the Telena's proper signal to pass port to port, and crossing from the south to the north side of the channel, where the collision occurred; also *held* that, conceding the claim of the Powhatan that, when half a mile ahead, the Telena was crossing the channel from the south side, she was still in fault under the rules for not stopping or keeping to the right, and that in no event was she justified in starboarding, as she admittedly did.

In Admiralty. Libel and cross-libel for collision between the steamships Powhatan and Telena, and petition for limitation of liability by the owners of the Powhatan. Decree in favor of the Telena.

Daniel H. Hayne, of Baltimore, Md., and Hughes, Little & Seawell, of Norfolk, Va., for the Powhatan.

Hughes & Vandeventer, of Norfolk, Va., and R. S. Erskine and Kirlin, Woolsey & Hickok, all of New York City, for the Telena.

Lewis, Adler & Laws, of Philadelphia, Pa., and John W. Oast, Jr., of Norfolk, Va., for cargo owners and underwriters.

W. P. McBain, of Norfolk, Va., for petitioners Hall & Reiss.

Edward R. Baird, Jr., of Norfolk, Va., for A. Minto.

WADDILL, District Judge. This proceeding involves a collision that occurred about 8:24 p. m. on December 15, 1916, in the lower waters of Chesapeake Bay, a short distance southeast of Thimble Light.

The ships were large, ocean-going vessels—the Powhatan 310 feet long, 38 feet beam, one of the fleet of the Merchants' & Miners' Transportation Company, sailing between Norfolk, Va., and Boston, Mass., outward bound; and the Telena, a British tramp steamship, 375 feet 6 inches long, 48 feet beam, inward bound. The collision occurred in the deep water channel that extends from a point two miles south southeast of Thimble Light, for a distance of some 3½ miles, in a southeasterly direction of Cape Henry. The channel is 35 feet deep, 500 feet wide, and marked on its southern edge by can buoys lighted at night and its northern line by nun buoys. The collision took place in the vicinity

of buoy No. 8, on the north line of, or slightly to the northward of the north line of, the deep water cut. The ships were considerably damaged, the Powhatan beached, and she and her cargo proved largely a total loss.

The Telena's case is that she was proceeding, inward bound, along the northern edge of the cut channel, on her proper course, and, observing the Powhatan ahead on the opposite side of the channel about a mile away, she gave the usual passing signal of one whistle, indicating her intention to pass port to port, and that, when the vessels were within some three-quarters to a mile of each other, the Powhatan responded with two whistles, and abruptly crossed to the northern side of the channel, and over the Telena's course; that on seeing the maneuver the Telena, then running about eight knots an hour, hard-ported her wheel, and reversed her engines, and did everything possible to avert the disaster, but the two vessels came together, the Powhatan's starboard side, about amidship, striking the port bow of the Telena a glancing blow.

The Powhatan claims that, while navigating as aforesaid along the southern side of the channel, she observed the masthead light of the Telena, one-quarter to one-half a point, on her starboard, some $3\frac{1}{2}$ miles away, navigating apparently up and outside of the cut channel, and to the southward of the range lights that marked the southern side of the cut, on the inside of which the Powhatan was navigating; that she subsequently observed her range and green lights some mile and a half away, still a quarter to a half a point on her starboard bow, when she put her helm half a point to starboard, thereby allowing greater room to pass, and steadied; that the Telena was apparently coming still nearer to the lighted buoys, and the Powhatan's course, when suddenly she showed her red and green lights, being then a half to three-quarters of a mile away, and thereupon the Powhatan sounded two blasts of her whistle, indicating starboard to starboard, and put her helm hard astarboard; that the Telena responded with one whistle, indicating her purpose to pass port to port—that is, responded by giving crossing signals, when it was too late for the Powhatan to alter her course, and in these circumstances, the Telena being well under swing to starboard, the Powhatan continued under a hard aport wheel, without slackening her speed of 14 knots an hour, until the collision, that maneuver being, in the judgment of the Powhatan's navigator, the surest way of escaping from the impending danger caused by the Telena's cutting across her course.

It will be readily observed that the contentions of the respective ships, as to how the collision was brought about and how they were navigating at and about the time of the collision, are directly at variance; and it is upon the correct solution of this apparently hopeless conflict that the merits of the case must be reached. The Telena's contention, briefly, is that upon meeting the Powhatan, while inward bound through the cut channel, in a situation that called for the vessels to pass port to port, she gave the accustomed signal of one blast, and the Powhatan responded with two blasts of her whistle, indicating her purpose to pass starboard to starboard, and without slackening her

speed, cut directly across the Telena's course, and ran into her. While the Powhatan says that she properly navigated through the cut channel, outward bound, and observing the Telena coming in, not in the channel at all, but on the outside of and to the south of it, bearing on the starboard bow of the Powhatan, that she sounded two whistles, indicating her purpose to pass starboard to starboard, and that the Telena responded by sounding one blast of the whistle, and immediately cut across her bow, at a time when it was too late to avert disaster.

That the collision should have occurred as claimed by either ship is most unusual. Navigators having regard alike for their own lives and those of their passengers, and the safety of the valuable property committed to their care and safe-keeping, rarely make such blunders, or are guilty of such gross negligence. Haney v. Baltimore Steam Packet Co., 64 U. S. (23 How.) 287, 291; The Lauretta Speddin, 184 Fed. 283, 285; The Surf, 230 Fed. 485, 489. Improbable, however, as is the charge, it is evident in this case, where the vessels are making, in effect, the same accusations one against the other, that as to one of the two vessels the claim is substantially true. One or two undisputed facts in the case will largely solve the problem, and at least serve to throw much light on the controverted issue. The Powhatan's version of the Telena's course is predicated upon the fact that the latter ship navigated not in the cut channel, but on the outside of and to the southern or left side of it, which, aside from being improbable, is positively negatived by the overwhelming preponderance of the testimony. The navigating officers of the Telena, namely, her master, third officer, quartermaster, lookout, and the Virginia pilot in charge of the ship's navigation, all either on her bridge or in positions to observe the ship's movements, testify directly to the contrary, and insist that she came in through the cut channel and along the northern or right-hand line thereof, and they further, one and all, testified to the fact of the Powhatan's course along the southern line of the channel, until she made a sudden departure across the Telena's course, after giving two whistles, indicating her purpose so to do. The Powhatan agrees with them as to where she was navigating, and that she cut across the channel, and over the course of the Telena to the northward, or to the north line of the channel, where the collision occurred.

The question in dispute is as to the cause of her crossing the channel—the Powhatan's claim being that she first sounded the two passing signals as the Telena showed her red and green lights, to which the Telena gave one blast in reply; whereas the latter ship insists that she first inaugurated the passing maneuver by giving one signal, to which the Powhatan improperly replied with two. Thus, as to those two most important matters, the Powhatan's course of navigation, and the fact of her starboarding sharply across the channel, and coming into collision with the Telena, the evidence is in harmony and full accord, leaving in dispute only the giving and hearing of signals, and the course of the Telena, whether along the northern side of the cut channel, or to the south of the southern line thereof. The five witnesses mentioned, from the Telena, swear positively to her course coming in,

and to the fact of her having inaugurated the passing signal, by sounding one blast of the whistle, and then receiving two blasts in reply; whereas only two witnesses from the Powhatan, her navigating officer and quartermaster, claim to have heard the one whistle from the Telena after the sounding of two by her, and as to her course to the southward of the channel. The Powhatan's master, who was on the inside of the ship and heard the two whistles sounded by her, testifies that he did not hear the single whistle; nor did Lieut. Carter, a naval officer on board the Powhatan as a passenger, examined as a witness by the Telena, and who heard the two whistles from the Powhatan hear the same, and neither of them testify as to the course of the Telena being on the south of the channel.

It is most significant that these experienced seamen, one the Powhatan's master and the other a naval officer traveling as a passenger upon her, did not hear the one blast signal from the Telena in reply to the two blasts from the Powhatan, if such single whistle was, in fact, given at that time. They were both on the inside of the Powhatan, and each, upon hearing the two blasts from her, an unusual signal, came out on deck quickly to ascertain its meaning, and each saw the Telena approaching, showing her red light, but neither heard the one signal, which they undoubtedly would have done, had the same been given, as claimed by the Powhatan; whereas, failure to hear the same, if given at the time the Telena's witnesses testify it was given, would not be surprising, as the two ships were then some distance apart, and they were on the inside of the vessel.

The court is not unmindful that the mere number of witnesses is not always a safe test to adopt in arriving at the true or real facts of a case. Here there are circumstances that strongly support those from the Telena. Her officers are manifestly more intelligent and experienced than those from the Powhatan. The master and third officer of the Telena were both officials of intelligence and long experience, each holding master's license, and the Virginia pilot, an experienced public officer. The quartermaster and lookout, while both Chinamen, were apparently well qualified, from long service at sea, to give an unbiased and correct account of what they saw and did; whereas, the only two witnesses called for the Powhatan, the third officer in charge of its navigation and the quartermaster, while doubtless of good meaning, were not persons who by their demeanor and manner on the stand, would impress themselves greatly upon others. The third officer had been at sea only seven years, held a second officer's license less than three years, and at the time of testifying was not engaged in navigation, but working for the Bethlehem Steel Company. The quartermaster was even less experienced—had been to sea only four years, acting as a sailor, waiter boy, and had been quartermaster three months, and at the time of testifying, was out of employment entirely. Evidence of witnesses of the caliber and limited experience of these two cannot carry with admiralty courts the weight that ought to be given to the testimony of persons that should be placed in such positions of responsibility. If shipowners are prejudiced as a result of these con-

ditions, they have only themselves to blame. The Eagle Wing (D. C.) 135 Fed. 826, 832, and cases cited.

Moreover, the Powhatan's failure to call witnesses cannot be lost sight of, especially her failure to produce the lookout, a most important witness of this occasion. Of the large number employed on shipboard, only the two above named were examined, and the chief engineer tendered for cross-examination. The master, while examined, was not in a position to give material testimony, save as to occurrences when the ships were within from two to three lengths of each other. It may be that the failure to produce the lookout was from no fault on the part of the Powhatan, but that will not relieve the owners from the misfortune of not having his testimony. The importance of his evidence was manifest, and his deposition should have been taken, if necessary, and at least, he should not have been allowed to go away, without making arrangements to be kept advised of his whereabouts. The New York, 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126; The Gladys (D. C.) 135 Fed. 601; The Georgetown (D. C.) 135 Fed. 854.

The court is convinced, from the entire testimony, that the Telena's version of the happening of the collision, and not that of the Powhatan, is the correct one; that the Telena did not navigate to the southward of the buoys on the southern line of the cut channel, but on the northern line of the same, and that the case was one of passing port to port; that, the Powhatan being admittedly on the southern line of the channel, the one whistle given by the Telena was the proper signal to have been sounded in the circumstances, and that the same was properly given.

Assuming, however, the version of the Powhatan to be true, that the Telena navigated to the southward of the line of the buoys, it would not serve to relieve her from responsibility under the facts and circumstances of this case. She admits having observed the masthead light of the Telena, bearing a quarter to half a point on her starboard bow some three miles away. Subsequently, when a mile and a half away, she again observed her, showing her masthead and green lights, still bearing a quarter to half a point on her starboard bow, and when about a half a mile away the Telena showed her red as well as her green and white lights. The latter position, at a distance of half a mile, clearly made the case one of meeting head on, or nearly so, under article 18, rule 1, and not one of crossing, as contemplated by that rule and article 19. Had the Powhatan, from any cause, failed to understand the course and intention of the Telena, she should, under rule 111 of article 18, have immediately signified the same by giving several short blasts, not less than four, of her steam whistle. The only excuse that can be given for the Powhatan's navigation is that she considered it a crossing, and not a head-on, situation; and, having the Telena on her starboard, it was her duty to keep out of the way of the latter. Even in this view, however, it would not (article 22) have warranted the Powhatan in attempting to cross ahead of the Telena, and she should, on approaching the latter ship (article 18), if necessary, have slackened her speed, or stopped, or reversed, instead of attempting to cut ahead. Had these rules of navigation been observed, whether

treating the case as one of head-on or crossing, the collision would almost certainly have been avoided. Instead, however, of observing the same, the Powhatan, upon seeing the red light of the Telena half a mile away, put her wheel hard astarboard, throwing herself directly across the course of that ship, and continued at full speed ahead of 14 knots an hour. This maneuver, adopted by the Powhatan, was the one which, in the judgment of the court, would almost certainly insure the bringing about of the very consequence that followed.

Considering the action of the Powhatan in the most favorable view, it would not warrant her in ignoring all other rules of navigation, especially rule 111, art. 18, above, and the general prudential rule, article 27. There was no excuse, upon her own showing, for her to have navigated, save with regard to article 18, rule 1; that is, the situation of end on, or nearly so, and upon the Telena's showing up her red light, for her to have starboarded and gone to port, instead of under a hard aport wheel to starboard, immediately across the course of the incoming Telena, was inexcusable.

It follows, from what has been said, that the Powhatan is solely responsible for the collision, and a decree so ascertaining will be entered on presentation.