## THE OTTAWA.

1. The court admitting that within reasonable limits cross-examination is a right, and on many accounts of great value, reflects upon an exercise of it as excessive in a case where there were between four and five hundred cross-interrogatories.
2. Lookouts must be persons of suitable experience, properly stationed on the vessel, and actually and vigilantly employed in the performance of their duty.
3. When acting as officer of the deck, and having charge of the navigation of the vessel, the master of a steamer is not a proper lookout, nor is the helmsman.
4. Lookouts should be stationed on the forward part of the vessel where the view is not in any way obstructed. The wheel-house is not a proper place, especially if it is very dark and the view is obstructed.
5. Elevated positions, such as the hurricane deck, are said by the court to be not in general as favorable in a dark night as those usually selected on the forward part of the vessel, where the lookout stands nearer the water-line, and is less likely to overlook small vessels deeply laden.
6 These principles applied, and a steamer condemned in a collision case, for want of a proper lookout; the case being one also where the lights of the steamer were badly attended to and gave imperfect warning.

APPEAL from the Circuit Court of the United States for

the Northern District of Illinois in a question of collision at night, on Lake Huron, between the steam propeller Ottawa and the schooner Caledonia, and by which the schooner was sunk; the decree in the Circuit as in the District Court having been against the steamer as in fault.

The controversy was one chiefly of fact; whether, for example, there was *any one* at all on the steamer's deck about the time of the collision besides the wheelsman then steering the vessel; whether the steamer showed lights as required; what the courses of the two vessels had been, and how far they properly or improperly held them on their approach to each other, and some others not necessary, in view of the decision, to be mentioned. The testimony was conflicting and prolix; the cross-examination of one witness alone having extended to *four hundred and thirty-two inquiries.* The chief *point of law* disputed in the controversy and the matter therefore to which the reporter more particularly directs attention was apparently this: Whether, assuming that the master was on the steamer's deck after the vessels came into such proximity as required precautions, until the moment before the collision occurred—a matter about which there were doubts—he was a competent lookout within the decisions of this court; *he having been, at the time, the officer of the deck, in charge of navigating her, and having been standing with the wheelsman in the wheel-house;* a place which, on this steamer, the mate swore was the best place for a lookout to be, well forward, and giving an unobstructed view; and which the counsel for the owners of the steamer, exhibiting to the court a photograph, stated was less than twenty feet from the bow.

*Mr. Dexter for the owners of the steamer; Mr. Proudfoot, contra.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Amended libel alleged that the appellee was the owner of the schooner Caledonia; that on the sixteenth day of September, 1860, she was engaged in prosecuting a voyage

from Chicago to Buffalo, having on board a cargo of six thousand bushels of wheat, belonging to her owner; that, at eight o'clock in the evening of that day, when she was navigating in Lake Huron, eight miles northwesterly from Thunder Bay Light, she encountered the propeller Ottawa, bound up the lake, and that the propeller was so negligently and carelessly managed and navigated that a collision occurred between the two vessels, whereby the schooner, with her cargo on board, was sunk in the lake and lost.

Appellant, in his amended answer, admitted the collision and loss, but denied that the propeller was in fault, and averred as a distinct ground of defence that the collision occurred entirely through the incompetency of those in charge of the schooner, and in consequence of their carelessness and mismanagement.

Decree in the District Court was in favor of the libellant, and the same was affirmed on appeal in the Circuit Court; whereupon the owner and claimant of the propeller appealed to this court.

I. Most of the material inquiries of fact presented for decision are, as usual in this class of cases, involved in perplexing uncertainty on account of the conflicting nature of the testimony. Superadded to that difficulty, which experience shows is one generally to be expected in controversies of this character, the present investigation is greatly complicated and embarrassed by the unreasonable length of the examinations and cross-examinations of the witnesses, as exhibited in the record. Undoubtedly a party calling a witness, may, if he sees fit, examine the witness by specific interrogatories, instead of relying upon the general statements of witness, as made responsive to the oath under which he testifies; and it is equally clear that the opposite party may in all cases cross-examine the witness in respect to all the material matters disclosed in the examination in chief, but it is past belief that everything valuable involved in the right of cross-examination may not be secured without propounding, in a collision case, four or five hundred questions to a single witness.

Cross-examination is the right of the party against whom the witness is called, and the right is a valuable one as a means of separating hearsay from knowledge, error from truth, opinion from fact, and inference from recollection, and as a means of ascertaining the order of the events as narrated by the witness in his examination in chief, and the time and place when and where they occurred, and the attending circumstances, and of testing the intelligence, memory, impartiality, truthfulness, and integrity of the witness; but a few questions, well directed to those several objects, are in general amply sufficient to effect all that can well be accomplished by the fullest enjoyment of that admitted right.

II. Embarrassed, however, as the investigation is by the complications and difficulties suggested, still there are some facts and circumstances having an important bearing upon the principal questions involved in the pleadings, which may be regarded as conceded, or as so fully proved that they are not properly the subjects of controversy in the case.

Seaworthiness of the schooner is not denied, and it is fully proved that she was well manned and equipped, and that the master, at the time of the collision, was in charge of her deck. Proofs are also entirely satisfactory that she had an able seaman at the wheel, and a competent lookout, properly stationed, forward of the windlass, having no other duty to perform, and at a place where there was nothing to obstruct his view.

Just before the collision the master was standing near the helmsman, but, when notified by the lookout that he discovered a light, he went immediately forward, in order to determine what, if anything, was necessary to be done.

Prior to six o'clock the schooner had been sailing on a course southeast by south, but, being well out in the lake, the master, as he states, changed her course at that hour half a point to the southward, and he adds that she had been sailing upon that course about two hours.

Evidence is full to the point that the schooner showed a proper light, and the master testifies in substance and effect that she held her course until the collision was inevitable.

Careful examination has been given to the evidence on this last point, and it is not perceived that there is any good reason to doubt the truth of the statement.

Allegation of the libel, as to the time and place of the collision, is correct.

Doubt cannot be entertained but that the propeller was a seaworthy vessel, and it is satisfactorily shown that she was well manned and equipped.

Appellee insists that she was responsible for the consequences of the collision, because she was in fault in three particulars:

1. He insists that she had no proper lookout, as required by the decisions of this court.

2. That she did not show the signal lights, as required by law.

3. That she did not comply with rule of navigation, which requires that where a steamer and a sail vessel are approaching each other from opposite directions, or on intersecting lines, the sail vessel shall hold her course and the steamer shall keep out of the way.

1. Argument for the appellee assumes that there was no one on the deck of the propeller, except the man at the wheel; but the appellant insists that the master, also, was on deck, and contends that the master, under the circumstances of this case, was a competent lookout within the meaning of the decisions of this court. Strong doubts are entertained whether he was on deck at all after the vessels came into such proximity as required precautions, until the moment before the collision occurred; but in the view taken of the case, it is unnecessary to decide the point, as it is clear that if he was on deck, as is supposed by the appellant, still he was not a proper lookout within the requirement of the rules of navigation, as expounded by the decisions of this court.

Two objections are made to the master, as lookout, even admitting that he was on deck, and they are both well taken. Admission of the appellant is, that the master was the officer of the deck, and that he had charge of navigating

the vessel, and the proofs are satisfactory that if he was on deck at all at that time, he was in the wheel-house with the man at the wheel. Steamers are required to have constant and vigilant lookouts stationed in proper places on the vessel, and charged with the duty for which lookouts are required, and they must be actually employed in the performance of the duty to which they are assigned. They must be persons of suitable experience, properly stationed on the vessel, and actually and vigilantly employed in the performance of that duty.* Proper lookouts are competent persons other than the master and helmsman, properly stationed for that purpose, on the forward part of the vessel; and the pilot-house in the night time, especially if it is very dark, and the view is obstructed, is not the proper place.† Lookouts stationed in positions where the view forward or on the side to which they are assigned, is obstructed, either by the lights, sails, rigging, or spars of the vessel, do not constitute a compliance with the requirement of the law; and in general, elevated positions, such as the hurricane deck, are not so favorable situations as those more usually selected on the forward part of the vessel, nearer the stem.* Persons stationed on the forward deck are nearer the water-line, and consequently are less likely to overlook small vessels, deeply laden, and more readily ascertain their exact course and movement.‡ Applying these rules to the present case, it is clear that the propeller did not have any proper lookout, and it will be sufficient to say that we adhere to those decisions without abatement or qualification.

2. Second objection urged by the appellee is, that the propeller did not show the signal lights required by law.

Proper signal lights as required on steamers are, a bright light forward, a red light on the larboard side, and a green light on the starboard side. Considering that the parties

---

* Chamberlain et al. v. Ward, 21 Howard, 570.

† St. John v. Paine, 10 Id. 585; Genessee Chief, 12 Id. 483.

‡ Haney v. Baltimore Steam Packet Co., 23 Id. 292; New York et al. v. Rae, 18 Id. 186.

will not be benefited by an extended analysis of the testimony, it is not deemed necessary to do more on this branch of the case than to state our conclusions. Better opinion is, that the red light was burning dimly at the time of the collision, but that the other lights had ceased to burn so as to be visible to those on board the schooner. Tendency of the proof also is, that all the lights had been lighted at the usual hour; but that the white and green lights, either because the lamps were not well trimmed, or because the .oil was poor, or from both causes combined, had gone out or burned so dimly as to answer no valuable purpose. None but the red light was seen by those on the deck of the schooner, and even that was not seen in season to afford any protection.

3. Third charge of the appellee against the propeller is, that she did not comply with the rule of navigation, which required her to keep out of the way of the schooner. Corresponding charge of the propeller against the schooner is, that she did not hold her course; but the latter charge cannot be sustained, because it is not supported by the weight of the evidence, except so far as it relates to the change made at the moment of collision, which is not a fault that will avail the other party.

Rules of navigation are obligatory from the time the necessity for precaution begins, and continue to be applicable as the vessels advance, so long as the means and opportunity to avoid the danger remain; but they do not apply to a vessel required to keep her course after the approach is so near that the collision is inevitable, and are equally inapplicable to vessels of every description while they are yet so distant from each other that measures of precaution have not become necessary.

III. Theory of the appellant is, that the propeller was to the leeward of the schooner, and that she was sailing northwest. Assuming that theory, he contends that the collision could not have occurred as alleged in the libel; and it may be that the theory, as a mere abstraction, is correct; but the best answer to it is, that the collision did take place, and the schooner, with her cargo, was sunk in the lake. Taken as

a whole, the proofs afford full satisfaction that the schooner did not change her course until all hope of avoiding the collision was gone.

Great conflict exists in the testimony as to the course of the propeller; but the best conclusion that can be formed from it is, that she was to the windward of the schooner. Both the lookout and the master of the schooner first saw the dim red light of the propeller nearly ahead over the starboard bow. Conceded fact is, that the propeller ported her helm; and, if so, she must have headed across the bows of the schooner. Confirmation of that view is derived from the manner in which the two vessels came together. Undisputed fact is, that the schooner, at the moment of collision, also ported her helm, doubtless with the hope of passing under the stern of the propeller; but the bowsprit, in a glancing blow, struck the larboard quarter of the propeller, which opened the starboard bow of the schooner, stove in the bow, tore off her headgear, split the bow open, opened the knight-heads, and broke the rail and stancheons on the larboard side. Weight of the blow was rather on the larboard side of the schooner; but the bowsprit, operating as a lever, opened the starboard bow. Injury to the propeller was on the larboard quarter, and it shows to a demonstration that the two vessels came together in the manner described by the witnesses of the libellants.

Decree of the Circuit Court is therefore

AFFIRMED WITH COSTS.

GRIER, J., assuming the facts differently, dissented.

