Mr. Justice SWAYNE
 

 stated the case, and delivered the opinion of the court.
 

 The collision, which is the subject of this appeal, occurred in the night of the 13th of December, 1865, off the Jersey coast, about twelve miles from Barnegat, and eight miles from land. The brig was on a voyage from Havre to New York. The wind was north-northeast. The brig was on her port tack, with her starboard side to the steamer, and going at the rate of four or five miles an hour. She was sailing closehauled, as near as she could lie to the wind, and heading west-northwest or northwest. The steamer
 
 *476
 
 was bound from New York to New Orleans, and was upon one of her regular trips. She was laden with freight and carried passengers. She was on her proper course, south by west one-quarter south, and running at the rate of seven or eight knots an hour. The brig did not change her course down to the time of the collision. The steamer was first made from the brig, about five points from her starboard bow. She was not discovered from the steamer until it was too late to avoid the collision. The steamer struck her on her starboard side, abaft the main chains. The blow was of such force that it cut through into her cabin and down to the water’s edge. She sunk in a short time. This libel was filed by her owners to recover damages for her loss. It was dismissed by the District Court. The decree was affirmed by the Circuit Court. The decree of the latter has been brought here by this appeal for review. In this court the controversy between the parties has been narrowed down to two points.
 

 It is insisted by the claimant of the steamer that the brig had no green light, or an insufficient one, on her starboard side; that the collision is due to this cause, and that the steamer is blameless.
 

 The ^.ellants deny this impeachment as to the light, and contend unit the lookout on the steamer wholly failed to do his duty; that he could, and should, have seen the brig, whether she had, or had not, a sufficient green light, in season to enable the steamer to avoid the collision, and that in this particular there is fault on her part. We shall consider the case only in these aspects.
 

 In regard to the light on the brig the testimony, as usual in such cases, is conflicting. We think that which sustains the negative largely preponderates. We find no sufficient reason to doubt that Morgan (the brig’s lookout) told the truth. He testified:
 

 “ The binnacle light used to bother me—it would frequently go out. There was something about the oil that was not right. . . When I was on the lookout I noticed our starboard light, but not until the Ariadne was very near to us. I stepped, to the side of
 
 *477
 
 the brig, thinking that our light might not be burning, and that the Ariadne might, therefore, run into us, and then I looked at our starboard light. The light was very dim. I was, I should judge, fifty feet from the light when I looked at it, and could see it plainty. As the light was then burning, I should not think it could be seen over two hundred feet.”
 

 This testimony is fully sustained by all the witnesses, six in number, who were on the steamer. They were in positions to see the light, and must have seen it if it were distinctly visible. The probative force of these proofs is not overcome by the testimony of the libellants. Both the courts below held the charge to be established, and we see no reason to dissent from the conclusion at which they arrived.
 

 The steamer was about two hundred feet long. She obeyed her helm with unusual quickness. When running at her then speed, she could be easily stopped in a space of about twice her length. She approached the brig in the direction most favorable for her lookout to see the hull and sails of the latter. According to the steamer’s testimony, a vessel without a light could be seen the eighth of a mile. Her testimony also shows the following facts: She had but one lookout. The second mate saw the brig first. He asked the lookout if he saw her. The lookout thereupon turned and saw her. He had not seen her before. He saw no light., and could not tell which way she was heading. Malony, who was at the wheel of the steamer, says:
 

 “I saw the brig just a moment before the first bell struck. The second mate struck first one bell, and then a second bell, and then rung again. There was not a second between. It was done as quick as lightning. . . . The Ariadne swung about a point and a half, or two points, before we struck.”
 

 The lookout says the steamer ran about.a length between the time when he first saw the brig and the time when the steamer struck her.
 

 There is no controversy as to the facts thus stated. They are undisputed and indisputable. Certain inferences from them are inevitable.
 

 
 *478
 
 The brig was not seen by the lookout or any one else on the steamer when she was distant-as far as she could have been seen. She was not seen by the lookout at all until his attention was called to her by the mate. She was not seen by either of them until almost at the moment of the collision. It is by no means certain that the lookout would have seen her before he felt the shock but for the inquiry of the mate. He was on the port side, and had been looking, according to his own account, three minutes in the opposite direction. The discovery came too late to do any good. The catastrophe was then unavoidable. For all the purposes of this case there might as well have been no lookout on the steamer. He could have rendered, and it was his duty to- render, a service of vital importance, but he rendered none. If the brig had been seen when she became visible from the steamer, or very soon thereafter, the collision could have been avoided. It would have been the duty of the steamer to stop or slow her engine until everything as to the brig, necessary to be known, was ascertained. This would doubtless have been done; and, if so, the result which followed would have been averted. Indeed, it would have been impossible to occur. We think the conduct of the lookout was marked by gross carelessness, and that it was clearly one of the concurring causes of the disaster.
 

 The waters near the city of New York are at all times crowded with shipping. Navigation there is not unlike the traveller threading his way through the mazes of a forest, with the difference that most of the objects to be avoided are also in motion. The greatest care and caution are necessary. The duty of the lookout is of the highest importance. Upon nothing else does the safety of those concerned so much depend. A moment’s negligence on his part may involve the loss of his vessel with all the property and the lives of all on board. The same consequence may ensue to the vessel with which his shall collide. In the performance of this duty the law requires indefatigable care and sleepless vigilance. The rigor of the requirement rises
 
 *479
 
 according to the power and speed of the vessel in question. It is applied with full force to the steamships belonging to our commercial marine. If this were not so, there would be no safety for other vessels. But it is equally important to vessels of that powerful class for their protection from one another. It is the duty of all courts, charged with the administration of this branch of our jurisprudence, to give it the fullest effect whenever the circumstances are such as to call for its application. Every doubt as to the performance of the duty, and the effect of non-performance, should be resolved against the vessel sought to be inculpated until she vindicates herself by testimony conclusive to the contrary.
 
 *
 

 The fault of the brig does not excuse the fault of the steamer if the latter -were, in any degree, a contributory cause of the collision.
 
 †
 

 Both vessels being in fault the damages must be divided.
 

 We are not unmindful that both the Circuit and District Court came to a conclusion different from ours as to the alleged fault of the steamer.
 

 Their judgments are entitled to, and have received, our most respectful consideration. Their concurrence raises a presumption,
 
 prima fade,
 
 that they are correct. Mere doubts should not be permitted to disturb them. But the presumption referred to may be rebutted. The right of appeal to this court is a substantial right, and not a shadow. It involves examination, thought, and judgment. Where our convictions are clear, and differ from those of the learned judges below, we may not abdicate the performance of the duty which the law imposes upon us by declining to give our own judicial effect.
 
 ‡
 

 Decree reversed, and the cause remanded to the Circuit Court with directions to enter a decree
 

 In conformity to this opinion.
 

 *
 

 The Louisiana v. Fisher et al., 21 Howard, 1; Chamberlain v. Ward, Ib. 549; Genesee Chief, 12 Howard, 443.
 

 †
 

 Chamberlain v. Ward, 21 Howard, 549; Gray Eagle, 9 Wallace, 505.
 

 ‡
 

 Quickstep, 9 Wallace, 669.