EASTERN DREDGING CO. v. WINNISIMMET CO. et al.

(Circuit Court of Appeals, First Circuit. June 19, 1908.)

No. 759.

**1. COLLISION—STEAM VESSEL AND SCOW DRIFTING AT NIGHT—NEGLIGENT MOORING.**

The going adrift of a mud scow, without lights, lying at a wharf in the night with no one on board, in calm weather, was prima facie due to her being negligently moored, and is sufficient to charge her with fault for a collision with a ferryboat while so adrift.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 85½.]

**2. SAME—FERRYBOAT—FAILURE TO KEEP PROPER LOOKOUT.**

A ferryboat, navigating Boston Harbor on a clear night, but when the water was dark, with the only lookout in the pilot house, was chargeable with fault, *held* to have contributed to a collision with a mud scow, low in the water and adrift.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 211.]

Appeal from the District Court of the United States for the District of Massachusetts.

See 138 Fed. 942, 159 Fed. 541.

Edward E. Blodgett (Blodgett, Jones & Burnham, on the brief), for appellant.

John O. Teele (Arthur P. Teele, on the brief), for appellee Winnisimmet Company.

William M. Blatt, for appellee Vanderbilt.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. In this case a collision occurred in the inner harbor of Boston between a mud scow, about 110 feet long, and the ferryboat City of Boston, which was plying regularly between Chelsea and Boston. The collision was of such violence as to sink the ferryboat. It occurred about 10 o'clock in the evening. The weather was clear and starlight, and yet it was dark on the water. There was said to be just wind enough to ruffle the surface of the

harbor, and this prevented the reflection of the lights on the shores, and, of course, somewhat darkened it. The scow was adrift, without any one aboard of her, which, of course, threw on her the burden of showing why she was adrift, and made out a prima facie case of negligence. It appears she had been left with her lines run out to the wharf, with no one aboard. There were no lights; but, as she was moored to the wharf, this did not charge her with fault. Some one in the neighborhood was employed to watch her, but was ignorant of her going adrift until about 9 o'clock in the evening. We have no occasion to trouble ourselves with reference to the negligence of the watch, either in not properly observing the scow or in not pursuing her, because, as the night was not a boisterous night, and, as we have said, with only sufficient wind to ruffle the water, the scow would not have been adrift if she had been properly moored. This was sufficient to charge her owners with negligence; and the District Court found her guilty, as to which the learned judge of that court was undoubtedly correct.

On the other hand, the District Court relieved the ferryboat from any liability. The facts as to her were that she had no lookout forward, although, of course, the main deck of an ordinary ferryboat affords an excellent opportunity for a lookout well forward and so near to the water that his eye can easily follow its surface. The only lookout was in the pilothouse, about 50 feet aft of the bow and some 20 feet above the water. The scow was not seen until the collision occurred, or at least not until so short a time before it occurred that it was impossible to avoid it. It was the opinion of the learned judge of the District Court that the lack of lookout forward might have been a fault, but he did not regard it as an efficient contributing fault. On the other hand, we think that this lack of a proper lookout was a very grave fault, and that the fault did contribute to the collision. The Supreme Court has been constantly rigid in holding vessels to maintaining lookouts as far forward and as near the water as possible. Especially where the water is dark, with otherwise a fairly clear night, it is important that the lookout should be as near it as possible, in order that his eye may follow the surface, and thus be in position to detect anything low down which may be approaching. While it may be true that there was no occasion to anticipate that a mud scow would be adrift in the harbor, without lights and without being manned, at that time of the night, various very small crafts, including even rowboats, were to be guarded against as a matter of reasonable and ordinary precaution. Whatever may be the custom with reference to ordinary ferryboats plying across a harbor like that of Boston, the law is even more strict with them than with ordinary seagoing vessels. Marsden on Collisions (5th Ed.) p. 383, refers to the fact that, while public convenience requires ferryboats to be running when other vessels may not be permitted to run, "more than ordinary care, vigilance, and caution are required" on their part; and again, at page 468, the learned author observes:

"The duty of ferryboats, and of vessels crossing the track of ferryboats, to keep a specially good lookout, has been insisted upon in many cases."

Beginning as early as The Genesee Chief, 12 How. 443, 463, 13 L. Ed. 1058, which was followed by a continuous line of decisions to the same effect, the Supreme Court observed as follows:

"Whenever a collision happens with a sailing vessel. and it appears that there was no other lookout on board the steamboat but the helmsman, or that such lookout was not stationed in a proper place, or not actually and vigilantly employed in his duty, it must be regarded as prima facie evidence that it was occasioned by her fault."

This, of course, means the fault of the steamer. Applying this rule to this case, it does not seem to be necessary to go further; but, again, in The Ariadne, 13 Wall. 475, 478, 20 L. Ed. 542, the opinion of the court, referring to the waters near the city of New York, spoke of them as being at all times crowded with shipping, and added:

"The greatest care and caution are necessary. The duty of the lookout is of the highest importance. Upon nothing else does the safety of those concerned so much depend."

Again, referring to the attitude of the lookout, the opinion says, on page 479 of 13 Wall. (20 L. Ed. 542):

"Every doubt as to the performance of the duty, and the effect of nonperformance, should be resolved against the vessel sought to be inculpated, until she vindicates herself by testimony conclusive to the contrary."

These expressions of the Supreme Court, which under the circumstances render the ferryboat prima facie guilty of contributory fault in this case, are in harmony with the views which all of us entertain, namely, that the lack of a lookout on the main deck was a grave fault, and that, with such a lookout, the scow would probably have been seen in season to have avoided her, so that it was a contributory fault in a positive and efficient manner. Therefore we are of the opinion that the damages and costs in the District Court should be divided.

The decree of the District Court is reversed, and the case is remanded to that court for proceedings in accordance with our opinion passed down the 19th day of June, 1908, and the appellant recovers its costs of appeal.