DAHLMER v. BAY STATE DREDGING & CONTRACTING CO.

THE ORION.

Circuit Court of Appeals, First Circuit.

May 31, 1928.

No. 2219.

1. **Navigable waters** ⬅️23—Statute making it unlawful to anchor in navigable channels held not to forbid anchoring, except where it necessarily prevents passage or creates dangerous obstruction (Act March 3, 1899 [33 USCA § 409]).

Act March 3, 1899 (33 USCA § 409; Comp. St. § 9920), making it unlawful to tie up or anchor vessels in navigable channels, so as to prevent or obstruct passage of other vessels, is merely declaratory of the general maritime law, and does not absolutely forbid anchoring in navigable waters, except at such places as necessarily prevents passage of other vessels, or obstructs them in passing to such an extent as to make an effort to do so a dangerous maneuver.

2. **Collision** ⬅️69—Mooring scows, so as to project 59 feet into canal 300 feet wide, held not improper (Act March 3, 1899 [33 USCA § 409]).

Mooring scows two abreast near entrance of canal, so that outer scow projected 59 feet into the channel, leaving 241 feet of navigable water, held not improper, under Act March 3, 1899 (33 USCA § 409; Comp. St. § 9920), as respects liability for collision therewith by passing vessel having 17-foot beam.

3. **Collision** ⬅️123—Vessel colliding with properly moored scow had burden of exonerating herself from blame, by showing she could not have prevented collision by reasonable precautions (Act March 3, 1899 [33 USCA § 409]).

Vessel, which collided with scow properly moored in canal, under Act March 3, 1899 (33 USCA § 409; Comp. St. § 9920), was presumed to have been in fault, and duty was on her to exonerate herself from blame by showing that it was not within her power to have prevented collision by taking reasonable and practicable precautions.

4. **Collision** ⬅️71(2)—That scows were improperly moored would not bar recovery, if collision could have been averted by reasonable diligence of colliding vessel (Act March 3, 1899 [33 USCA § 409]).

Even if scows were improperly moored in canal, under Act March 3, 1899 (33 USCA § 409; Comp. St. § 9920), such fact alone would not bar recovery by their owner for collision, which could have been averted by exercise of reasonable diligence on part of those in charge of passing vessel.

5. **Collision** ⬅️75(6)—Rule relating to lights required on anchored vessels held inapplicable to moored vessels (Pilot Rules for Inland Waters, art. 11 [33 USCA § 180]).

Pilot Rules for Inland Waters, art. 11 (33 USCA § 180; Comp. St. § 7884), providing that vessels lying at anchor shall carry forward one white light in a lantern so constructed as to show clear, uniform, and unbroken light visible at least for one mile, held inapplicable to moored vessels, and therefore did not apply to moored scows at side of canal.

6. **Collision** ⬅️75(6)—It was better seamanship to have one light at each end of outer of two scows moored abreast than to have one light on each scow.

On question whether two scows moored abreast near entrance of canal were lighted in a reasonably safe, prudent, and proper manner, as respects liability for collision therewith by passing vessel, it was better seamanship to have one light at each end of the outer scow than to place one light on each scow.

7. **Collision** ⬅️79—Evidence held to warrant finding that lights on moored scow were bright and properly burning, as respects liability for collision.

On libel for damages to scow moored near canal entrance, sustained in collision therewith by passing vessel, evidence held to warrant finding that lights on scow were bright and were properly burning.

8. **Collision** ⬅️77—Moving vessels must maintain careful and efficient lookout, properly stationed and maintaining high degree of vigilance (Inland Rules, art. 29 [33 USCA § 221]).

It is a primary rule of navigation that all moving vessels shall maintain a careful lookout, who is both eyes and ears of the ship, and he must be properly stationed on the forward end of the vessel and held to a high degree of vigilance, under Inland Rules art. 29 (33 USCA § 221; Comp. St. § 7903).

9. **Collision** ⬅️77—Neither captain nor helmsman are "lookouts," within maritime law (Inland Rules, art. 29 [33 USCA § 221]).

Neither the captain nor the helmsman in the pilot house can be considered "lookouts," within the meaning of the maritime law (Inland Rules, art. 29 [33 USCA § 221; Comp. St. § 7903]).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Lookout.]

10. **Collision** ⬅️79—Evidence held to warrant finding collision with moored scow occurred through negligence of passing vessel in not having proper lookout.

On libel for collision damages to scow moored at entrance of canal, evidence held to warrant finding that collision occurred through negligence of passing vessel in not having proper lookout.

11. **Appeal and error** ⬅️1008(1)—On appeal, great weight is to be attached to trial court's findings of fact.

On appeal, great weight is to be attached to findings of trial judge, who had opportunity of seeing and examining witnesses in the case.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Libel by the Bay State Dredging & Contracting Company against John A. Dahlmer, claimant of the steamer Orion, in which claimant filed cross-libel. Decree for libelant, and claimant appeals. Affirmed.

R. Chandler Davis, of Gloucester, Mass., for appellant.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass. (Charles S. Bolster and V. B. Kneeland, both of Boston, Mass., of counsel), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

HALE, District Judge. On May 29, 1927, at about half past 10 o'clock in the evening, the claimant's auxiliary schooner Orion, proceeding westerly, came into collision with libelant's scow No. 37, near the easterly entrance of the Cape Cod Canal. The scow was made fast, outside the libelant's scow No. 40, to two dolphins at the westerly end of the line of dolphins near the entrance, and on the northerly side of the canal. The night was dark and clear. A tide of 4 or 5 knots per hour was running westerly. The Orion is 97.7 feet in length, 17 feet beam, and at the time of the collision was running under power at a speed of about 7 miles per hour. Scow No. 37 is a square-ended wooden scow, 115 feet long, 32 feet wide, and 12 feet side. Scow No. 40 is of a similar shape to scow No. 37, and is 100 feet long, 35.5 feet wide, and 11 feet 8 inches side. Scow No. 37, when light, has her side out of water 8 feet, and scow No. 40, 7 feet 4 inches. Certain iron lanterns, manufactured by Dietz of New York and marked "No. 2 Blizzard," were placed on each end of scow No. 37 at approximately the middle of the ends of the scow, 6 feet 9 inches above the deck of the scow, and the light was about 14 feet 9 inches above the level of the canal. The dolphins to which the scows were moored were approximately 8 feet outside of the northerly edge of the channel. As the scows were moored at the time of the collision, scow No. 40 was partly in the channel. Scow No. 37, moored alongside No. 40, was in the channel; the outer side of scow No. 37 being about 59 feet from the northerly edge of the channel. The canal at that point is 300 feet wide. No one was on board either of the scows at the time of the collision. About 4 p. m. an employee of the libelant posted the lanterns referred to, and no person in libelant's employ was on board either scow from the time this man left until the time of the collision. The libelant's dredge No. 4 was moored on the opposite side of the canal, about 388 feet, running lengthwise of the canal, westerly of the western-most dolphin, to which scows No. 37 and No. 40 were moored, and outside the libelant's dredge a waterboat 23.3 feet in width was moored.

On July 25, 1927, a libel was filed by the libelant in the District Court of Massachusetts to recover damages caused by the collision. On July 26, 1927, a cross-libel was filed by the claimant against the scow. The case was duly heard by the District Court. On November 14, 1927, the court entered a decree holding the Orion solely at fault. The case is now before us on the claimant's appeal from that decree.

The claimant contends that the collision occurred through the fault of the libelant in mooring scow 37 in the channel of the canal, and in improperly lighting the scow.

[1, 2] 1. Was the libelant at fault for improperly mooring the scows?

The Act of March 3, 1899 (U. S. Comp. Stat. § 9920; 33 USCA § 409), provides:

"It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft."

This act is declaratory of the general maritime law upon the subject. In The Caldy, 153 F. 837, 840, in speaking for the Circuit Court of Appeals for the Fourth Circuit, Judge Goff said:

"We do not think the Congress intended by Act March 3, 1899, c. 425, § 15, 30 Stat. 1152 (33 USCA § 409; U. S. Comp. Stat. 1901, p. 3543), to absolutely forbid anchoring in navigable waters, except only at such places as the location of the vessel would necessarily prevent the passage of other vessels, or obstruct them in passing to such an extent as to make the effort to do so a dangerous maneuver. If a vessel anchors at a point in a channel where, notwithstanding such anchorage, other vessels, navigated with the care the situation requires, can safely pass, then she has neither violated the statute, nor rendered herself liable under the general rules applicable to navigation, even though to a certain extent she has obstructed the channel."

In the instant case, the proofs show that the outboard side of scow 37 extended 59 feet into the channel from the northerly bank, leaving 241 feet of open navigable water. The beam of the Orion was 17 feet. The general manager of the canal testified that the purpose of having dolphins at the eastern end of the canal is to provide a mooring place for vessels awaiting orders and otherwise delayed in transit; that vessels tie up two

abreast frequently, and sometimes three abreast; that by tying up two abreast it leaves a wider channel than is available in the inner section of the canal where the channel is only 100 feet wide; that the tying of barges abreast is done to conserve space and leave mooring space for other vessels expected to arrive.

The proofs further show that the steamer from Boston to New York passed the spot without any trouble two and a half hours before the collision, and that there is a local custom in the canal, having the sanction of the canal authorities, of mooring vessels two abreast at these dolphins.

We are of the opinion that the District Court was right in holding "that the scows were properly moored."

[3] 2. It must be found, then, that the Orion collided with a vessel properly moored; that she must be presumed to have been in fault, and to have the duty upon her to exonerate herself from blame by showing that it was not within her power to have prevented the collision by taking reasonable and practicable precautions. The Granite State, 3 Wall. 310, 314, 18 L. Ed. 179; The Oregon, 158 U. S. 186, 15 S. Ct. 804, 39 L. Ed. 943; Virginia Ehrman, 97 U. S. 309, 315, 24 L. Ed. 890; The Grand Manan (D. C.) 208 F. 583, 587.

[4] But, even if it were held that the scows were improperly moored, such fact alone would not bar a recovery, if the collision could have been averted by the exercise of reasonable diligence on the part of those in charge of the Orion. The Yucatan (C. C. A.) 226 F. 437, 439.

[5] The claimant contends that scow No. 37 was not properly lighted, and that this fault contributed to the collision.

The claimant invokes article 11 of the Pilot Rules for Inland Waters (33 USCA § 180; Comp. St. § 7884), which provides that vessels lying at anchor shall carry, forward, one white light in a lantern so constructed as to show a clear, uniform and unbroken light, visible all around the horizon for a distance of at least one mile, and urges that, although in terms the rule refers to vessels lying at anchor, it should also apply to moored vessels, as well as to other vessels not in motion.

We cannot sustain the contention that a moored vessel is subject to the same rules, relating to lights, as those applying to an anchored vessel. It is the doctrine of the courts that no analogy can be drawn between anchored vessels and moored vessels in this connection. The Granite State, 3 Wall. 310, 313, 18 L. Ed. 179.

In the instant case the rule of lighting relating to anchored vessels cannot be held to apply to scows moored on the side of a canal. The question before us is whether or not scow No. 37 was lighted in a reasonably safe, prudent and proper manner.

[6] It seems obvious that it was better seamanship to have one light at each end of the outer scow No. 37 than it would have been to place one light on the outer scow and one on the inner scow.

[7] There is testimony that the lights were, in fact, visible to Boatman Harrison of the Canal Company at his dock more than 1,000 feet from the scows. Harrison and the Coastguardsman Brady testified that the lights were burning brightly. It appears from further testimony that the lights were visible to those on the tug John Cashman at the dock, the easterly corner of which was about 825 feet from the scows.

The claimant presented testimony from those on board the Orion that the lights upon the scow were dim and were not discernible for a distance of a mile, and that their lookout did not see the lights until just before hitting the barge. The proofs offered by the claimant upon this subject were generally of a vague character and were not persuasive. From the preponderance of the testimony in the case we think the proofs sustain the District Court in finding "that the lights on the scow were bright and were properly burning."

[8, 9] 3. The libelant charges fault on the part of the Orion for failure to maintain a proper lookout, and that such fault caused the collision.

It is a primary rule of navigation that all moving vessels shall maintain a careful and efficient lookout. The lookout is "both eyes and ears of the ship"; he must be properly stationed on the forward part of the vessel and must be held to a high degree of vigilance in that position. Neither the captain nor the helmsman in the pilot house can be considered to be "lookouts" within the meaning of the maritime law. Inland Rules, art. 29 (33 USCA § 221; Comp. St. § 7903); The Sagamore (C. C. A.) 247 F. 743; Ariadne, 13 Wall. 475, 478, 20 L. Ed. 205; The Oregon, 158 U. S. 186, 193, 194, 15 S. Ct. 804, 39 L. Ed. 943; Delaware, L. & W. R. Co. v. Central R. Co. of N. J. (C. C. A.) 238 F. 560, 562; The Genessee Chief, 12 How. 443, 463, 13 L. Ed. 1058.

[10] It appears from the proofs offered by the claimant that the master, helmsman, and engineer of the schooner observed the lights at about the same instant that they were ob-

served by the lookout and just before the collision. The only lookout posted on the Orion testified:

"Q. 3. Now, will you please tell the court what you noticed when coming into the Cape Cod Canal? A. I never saw nothing, but just before we hit the barge I had a chance to say 'Oh!' and we were right up to it."

"Q. 6. What did you first notice? A. Well, I noticed a light, the first thing I saw, but we were right up against it when I seen it."

"Q. 9. What did you do after you saw the light? A. I turned around like that and cried 'Oh!' and she struck."

"Q. 13. What sort of eyesight have you? A. Fair."

From a preponderance of evidence in the case we are of the opinion that the lookout was not actually and vigilantly employed in the performance of his duty, and that his failure to perform his duty was the primary cause of the collision. We think the District Court was right in finding that the collision occurred "through the negligence of the Orion in not having a proper lookout."

[11] The trial judge in the District Court had the opportunity of seeing and examining all the witnesses in the case. Great weight is to be attached to his findings.

The decree of the District Court is affirmed; the appellee recovers costs in this court.