**THOMAS et al. v. PACIFIC S. S. LINES, Limited.**

**No. 8007.**

Circuit Court of Appeals, Ninth Circuit.

June 10, 1936.

John Guthrie Heywood, of San Francisco, Cal. (J. W. Coleberd, of South San Francisco, Cal., of counsel), for appellants.

Keith R. Ferguson, of San Francisco, Cal. (John P. Jennings, of San Francisco, Cal., of counsel), for appellee.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

This cause comes to us on appeal (by the libelants below) from a decree of the District Court of the United States for the Northern District of California, sitting in admiralty, dismissing the libel and awarding costs to the respondent.

Two causes of action are set forth in the amended libel as amended, one in behalf of appellant Thomas, which in substance alleges (1) that appellee, during all of the time herein mentioned, was a corporation engaged as a common carrier engaged in transportation by water of property between Seattle, Wash., and San Francisco, Cal., and that the steamship City of Los Angeles so and then operated by appellee was during all of such time a common carrier; (2) that on August 20, 1933 at Seattle, Wash., the appellant Thomas placed and shipped certain racing dogs, in good health, order, and condition, on said vessel, to be carried to San Francisco and there delivered to said appellant in like health, order, and condition, and that said carriage was to be in consideration of an agreed freight; (3) that appellee accepted and received said dogs on said vessel as a common carrier; that said vessel sailed from Seattle with said dogs aboard on August 30, 1933; (4) that four-

teen of the dogs died en route from the fault and negligence of appellee with respect to the loading, stowage, custody, and care thereof by reason of the fault and negligence of the master, officers and crew of said vessel in improperly inclosing with canvas or tarpaulin the crates and kennels containing the dogs, thereby excluding sufficiency of air to sustain life in the dogs and causing the death of the same by heat exhaustion, all to the damage of said appellant in the sum of $16,500.

The allegations of the second cause of action are substantially as above except that one Brooks is libelant, the number of dogs alleged to belong to him is fourteen, all of which died for like reasons, to the damage of Brooks in the sum of $17,500.

Respondent answered, setting up admissions, denials, and twelve separate affirmative defenses. Certain interrogatories were propounded by each libelant, to which respondent either answered or excepted, and Thomas either answered or excepted to certain interrogatories propounded to him by respondent.

The testimony of seventeen witnesses was submitted to the trial court; ten of them testified in open court.

The trial court made the following finding: "After a careful examination of the evidence and the briefs of the parties, I find that, under the original contract of carriage, libelants agreed that they would feed, water and care for the dogs; that the animals were placed in a position on the boat designated by libelants; that they were covered with canvas at the request of libelants; that, under the contract of carriage, the shipping company was bound only to furnish such facilities as were requested by libelants and that the facilities furnished, namely, the canvases, were requested by the libelants; that the canvases were placed over the truck and trailer at the request of and under the direction and with the approval of the libelants and in the manner requested and approved by the libelants; that the canvases were so placed because of fear of damage to the dogs from too much air; that the resulting death of the dogs was due to heat exhaustion superinduced by lack of air; that this unfortunate situation arose from no negligence on the part of the shipping company or its officers or employees, but from the bad judgment of the libelants in directing the covering as aforesaid; that the libelants have failed to prove liability as

averred; and that decree dismissing the libel should enter. Such will be the order of the Court. Proper form of decree may be submitted."

Appellants assigned and specified in substance the following, as errors relied upon:

(a) The finding and decree are not supported by the evidence, in that the trial court gave weight and credence to testimony which was so contrary to human instinct and conduct as to render such testimony wholly unworthy of belief.

(b) The decree is predicated upon the erroneous legal theory that the seamen who actually inclosed the vehicles containing the dogs were the agents, not only of the owner, but also of the shippers.

(c) The evidence conclusively shows that the carrier failed to discharge duties imposed upon it by law.

(d) No agency relation existed between the two libelants, and the alleged approval by Thomas of the method of placing certain canvas coverings over the vehicles containing the dogs was not binding upon Brooks.

(e) The decree is based upon contributory negligence of libelants.

(f) If negligence was shown on the part of the shippers, this being an admiralty proceeding, the damages should have been divided between the shippers and the carrier.

The first assignment of error raises the question as to whether or not certain evidence received on behalf of appellee was so contrary to human interest and instinct and so inherently improbable as to be unworthy of belief. This question invites two considerations: (1) How much consideration, in an appeal in admiralty, should be given to the trial judge's finding on a disputed question of fact? (2) Was the evidence so received and so complained of in fact or in law so inherently improbable and contrary to human interest and instinct that we can declare it to be unworthy of belief?

There is difficulty in stating a fixed rule with respect to the weight that should be given on appeal from a decree in admiralty to the findings of the trial court. We believe and hold that the correct rule is that, where a substantial part of the evidence was heard in open court where the trial judge had opportunity to see the witnesses, hear their testimony, and observe

their demeanor while testifying, with ample opportunity to pass upon their credibility and accuracy, such findings are accompanied with a rebuttable presumption of correctness (Pentz v. The Ariadne, 13 Wall. 475, 479, 20 L.Ed. 542); but, if the trial court could not weigh the credibility of the absent witnesses against that of the present witnesses, such presumption has the lesser weight described in The Natal (C.C.A.9) 14 F.(2d) 382, 384, and Broughton & Wiggins Nav. Co. v. Hammond Lumber Co., 84 F.(2d) 496, decided by this court on June 10, 1936. In our consideration of the case we have reviewed the entire evidence and given it the independent "examination, thought and judgment" required by The Ariadne, supra, 13 Wall. 475, 479, 20 L.Ed. 542.

An examination of the record before us discloses, not only that ten out of seventeen witnesses personally appeared before the court, but that a substantial part of the evidence came from the lips of witnesses in open court.

On the second consideration suggested above we note that appellants seek support for their contention by citing 70 C.J. p. 777, § 962, as follows: "(b) Incredible, or Improbable Testimony. The reasonableness or probability of a witness' testimony bears on his credibility. The most positive testimony of a witness may be contradicted by circumstances in evidence, by admitted facts, by the fact that the testimony is contrary to the laws of nature, or the physical facts, or physical laws, or mechanical laws, or scientific principles, or common observation or experience, or the common principles by which the conduct of mankind is governed. So the courts are not required to believe that which they judicially know to be incredible, and testimony may be so improbable, when tested by rules which govern men of ordinary capacity and intelligence in a given business transaction, that a court may refuse to credit it. Although the mere fact that the testimony of a witness is improbable does not require that his testimony be rejected as false, he may be thoroughly discredited by the inherent improbabilities of his testimony, even though he is not impeached or contradicted by direct evidence, especially where he is interested, or the circumstances indicate bias on his part."

We think, however, that the force of the last-mentioned citation must be measured by reading in the same volume and under the same heading the following limitation (70 C.J. 780): "On the other hand, in the absence of established facts or circumstances with which the evidence cannot possibly be reconciled, it cannot be regarded as incredible. * * *"

It is exceedingly difficult to see in what manner the evidence complained of is "inherently improbable," nor do we believe it "to be contrary to the common principles by which mankind is governed," nor contrary to "human instinct" nor contrary to the "interest" or "conduct" of libelants.

We have before us evidence concerning certain alleged actions and statements of one of appellants and the employees of both appellants who were actually in charge of the dogs, really experts in handling such animals, and evidently fearful of exposing the animals to the wind and dampness of an ocean voyage.

The evidence complained of tends to show that in the light of later events the statements and actions of appellants and their agents were serious mistakes, but, if believed by the trial court, were amply sufficient to support his findings, and support our findings to that effect. We think such statements were entirely free from the objection that they were incredible.

The statements or conduct of any individual may be basically mistaken and yet be entirely credible. Whether or not such actions or statements are consistent with the interests or instincts of the parties making them should be determined by their condition and purpose or objective at the time they occur, not by the result that obtained perhaps through mistaken or unthoughted intent.

The conduct of the appellants and their agents, as testified to by various witnesses, far from being inconsistent with the interest or instincts of such individuals, is, we think, entirely consistent with their desire as experts in the care of dogs to supervise the location, stowage, and protection of the vehicles containing the dogs, and thus protect them from wind and dampness, rather than to leave the same to officers and sailors not so skilled.

We cannot hold such evidence impossible of belief merely because the result was disastrous.

The record shows clearly direct and positive testimony to the effect that appellants made inquiry of appellee's agent for transportation of the dogs, were advised of

the facilities of the vessel, inspected the same, selected the place for the location of the vehicles containing the dogs, identified the same on the boat's plat, and stated that they would feed, water, exercise, and take complete charge of the dogs.

We think it clear upon the record that all parties hereto at all times understood and believed and agreed that appellants under the contract of carriage retained full care and charge of the dogs, and that the crew had no right, under the contract of carriage. to do anything with respect to the dogs unless requested to do so by the owners or their trainers. There is abundant direct evidence tending to show that the vehicles containing the dogs were covered with tarpaulin at the request, under the direction, and in the presence, of at least one of appellants and the trainers in charge of each appellant's dogs.

■ Upon the face of the record above indicated, we hold that the crew acted as directed by appellants in so covering said vehicles, and that for such damage as resulted therefrom the appellee cannot be held. Katzenberg v. Lamport & Holt (D. C.) 59 F.(2d) 739, affirmed on appeal (C.C. A.) 64 F.(2d) 1014. The rule with respect to this question seems to be identical to that prevailing in transportation by rail. Gulf, etc., Ry. Co. v. Persky (Tex.Civ. App.) 200 S.W. 606; Gus Datillo Fruit Co. v. Louisville & N. Ry. Co., 226 Ky. 813, 11 S.W.(2d) 953.

The appellants, having retained, as their own, the care of the dogs while in transit and having assumed the direction of the covering of the dogs, and having in fact directed the method thereof, cannot complain that injury resulted therefrom.

■ By the third assignment, appellants contend that proper stowage of the dogs was the duty of the carrier and that its failure in this respect resulted in the death of the dogs.

Where, under a special contract of carriage, the shipper reserves to himself the care and control of the cargo while in transit, and injury occurs thereto by reason of the acts and orders of the shipper, there is no liability on the carrier. The Mazatlan (C.C.A.9) 287 F. 873 [certiorari denied 263 U.S. 701, 44 S.Ct. 6, 68 L.Ed. 514]. See, also, The Powhattan (C.C.N. Y.) 12 F. 876, opinion by Circuit Justice Blatchford.

In the face of the fact that appellants refused the space allotted by the carrier, chose another space, directed the dogs to be placed there, and superintended their feeding, exercising, and covering, we must and do hold this assignment to be not well taken.

Appellants now contend that the record is devoid of evidence indicating that Thomas acted for Brooks. We see no merit in this argument, because it is undisputed that Thomas did act for Brooks in the preliminary steps of the venture, and certainly Brooks' own trainer, who observed the manner in which the dogs were covered and acquiesced therein, was acting for him. We believe such evidence to lead to the conclusion that Thomas actually was the agent for Brooks.

The last two assignments specified by appellants raise the question of contributory negligence, but, inasmuch as the trial court affirmatively found that appellee was not guilty of negligence and the record is replete with evidence which leads us to a like conclusion, we decline to consider these two assignments further than to say that they raise wholly immaterial questions.

In order to apply the rule of apportionment of damages, there must first be a finding of contributory negligence. There is no such finding in this record.

The decree of the trial court is affirmed.