**HANOVER FIRE INSURANCE COMPANY, Appellant,**

v.

**Harold W. HOLCOMBE, Appellee.**

**No. 15406.**

United States Court of Appeals
Fifth Circuit.

June 21, 1955.

Rehearing Denied Aug. 5, 1955.

Henry N. Longley, New York City, David W. Dyer, Douglas D. Batchelor, Miami, Fla., Bigham, Englar, Jones & Houston, New York City, Smathers, Thompson, Maxwell & Dyer, Miami, Fla., for appellant.

Martin D. Von Zamft, Miami, Fla., Darrey A. Davis, Miami Beach, Fla., Von Zamft & Kravitz, Miami, Fla., Sibley & Davis, Miami Beach, Fla., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

Alleging that the vessel Doromar had been insured by the defendant against loss by fire, and that, while the policy was in force, the Doromar burned and sank and became a total loss, plaintiff sued to recover the loss.

The defendant, admitting that, under the terms of the policy, burning and sinking were perils insured against, pleaded as a separate and complete defense an express warranty of seaworthiness and that the vessel was unseaworthy at the time of the commencement of the voyage.

While the answer did not specify wherein the vessel was unseaworthy, the issue tendered and tried under the answer was that the "Doromar" was in- sufficiently manned and, therefore, unseaworthy for the voyage from Miami to Panama Canal.

In support of its claim, the respondent proved that the vessel broke ground for the voyage with a crew of three men, and offered opinion testimony of several witnesses that this was an insufficient complement and the vessel was, therefore, unseaworthy.

On his part plaintiff called opinion witnesses who expressed the view that the "Doromar" was properly manned.

At the conclusion of the testimony, the district judge, stating "The testimony on the issue is extremely complicated, and the court concludes it does not preponderate in favor of the defendant, and, therefore, the defendant has not carried the burden of proof", found for plaintiff and gave judgment accordingly.

Appealing from that judgment, defendant is here insisting not that it did not have the burden of proving unseaworthiness[1] but that the finding that it did not carry its burden was clearly erroneous and that the judgment may not stand.

We do not think so. In McLanahan v. Universal Insurance Co., 1 Pet. 170, 7 L.Ed. 98, cited by defendant as its leading authority, the court, 1 Pet. at page 184 said:

"What is a competent crew for the voyage; at what time such crew should be on board; what is proper pilot ground; what is the course and usage of trade in relation to the master and crew being on board when the ship breaks ground for the voyage; are questions of fact, dependent upon nautical testimony; and are incapable of being solved by a court, without assuming to itself the province of a jury, and judicially relying on its own skill in maritime affairs."

From this utterance to that in the latest decisions on this question, the view of

---

1. New York & P.R.S.S. Co. v. Aetna Ins. Co., 204 F. 255, at page 258; Fireman's Fund Ins. Co. v. Globe Nav. Co., 9 Cir., 236 F. 618.

the courts has been uniform. What, in effect, appellant asks us to do in this case is, "assuming to ourselves the province of a jury and judicially relying on our own skill in maritime affairs", to substitute our opinion for that of the trial judge. The district judge could not, he did not, in determining the issue, rely on his own skill in maritime affairs. He was bound to decide the case on his opinion of the weight of the evidence in the light of the rule that defendant bore the burden of establishing its defense. Refusing to judicially rely on his own skill in maritime affairs and deciding the case upon the evidence as enjoined upon him by the decisions, he found the issue against the defendant. To set his finding aside as clearly erroneous, we are not furnished with any basis, we think we have none, except judicially relying on our own skill in maritime affairs. Couch, Cyclopedia of Insurance Law, Vol. 5, Section 1089, thus correctly states the rule controlling here:

"The presumption of law is that every vessel is seaworthy until the contrary is proved, and the burden of proving that a vessel is unseaworthy lies upon the insurance company."

Appleman on Insurance Practice, Vol. 21, Section 12237, page 120, is to the same effect. We think we cannot under this rule reverse the judgment without denying to the district judge's findings the weight they are entitled to under Admiralty Rules, No. 46½, 28 U.S.C.A., McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6.

The judgment is affirmed.

RIVES, Circuit Judge (dissenting).

Upon a careful consideration of the entire evidence, I am "left with the definite and firm conviction that a mistake has been committed",[1] and in good conscience, I must therefore respectfully dissent. I would be the last to rely on my own skill in maritime affairs,[2] for I have no such skill; but this is not a jury case and a judge, of course, cannot transfer to so-called expert witnesses his duty and responsibility to arrive at a just conclusion from the evidence.

The policy contained an express warranty of seaworthiness for each voyage.

There was no dispute in the factual, as distinguished from the opinion, evidence. The Doromar was a motor vessel 109′ in length and 18′ abeam. She was powered with four Diesel engines geared to two propellers. The pilothouse was at the forward end of the vessel on a deck above the main deck. The engine room was aft, down in the hold. The galley was on deck aft of the engine room. The engines could only be controlled by an engineer on watch in the engine room for there were no controls of the engines from the pilothouse.

The vessel sailed from Miami on August 9, 1953, for the Panama Canal, a voyage of about 1200 miles which would require something over four days. This voyage required that the vessel skirt along the Cuban Coast, thence through the Yucutan Channel and, following the usual lane of travel, she would skirt various islands, rocks and shoals en route.

On this voyage the Doromar was manned by but three men, the master, the engineer and the cook. Fire broke out in the engine room of the Doromar at about 6 o'clock in the morning of August 12th, three days after the Doromar sailed from Miami, when the vessel was about 104 miles south southwest of the westerly tip of Cuba. The master was then at the wheel; the engineer was asleep on the floor of the wheelhouse; the cook was in the galley preparing breakfast. There was no one in the engine room and there had been no one there for some three

1. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746; cf. Admiralty Rule 46½; McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6.

2. McLanahan v. Universal Insurance Co., 1 Pet. 170, 184, cited in the majority opinion.

hours. The district court found that, "The presence of a member of the crew at the origin of the fire might well have avoided the destructive effect of fire."

The Deputy Collector of Customs at Miami testified that he had been able to locate four clearances of the Doromar at Miami between 1948 and 1953. On none of these voyages did the vessel sail with but three men and on one voyage to Baracoa, Cuba, she had nine men. There was no testimony that the vessel had ever before this voyage sailed with a crew of only three men.

The defendant offered the opinion testimony of five qualified experts who testified in effect that, manned as the Doromar was when she sailed from Miami on the voyage to Panama Canal, she was insufficiently manned and, therefore, unseaworthy. They pointed out that it was particularly necessary on the Doromar for there to be an engineer on watch at all times because there was no control of the engines from the pilothouse. They also pointed out the necessity for a lookout. Manned as the Doromar was, she was a danger not only to herself but to other vessels: she could not have a lookout to pick up approaching vessels, which is important in this much travelled lane and particularly important in thick weather or at night; nor an engineer always on watch to maneuver or stop the engines in the event of impending collision or fire.

The plaintiff offered the opinion testimony of three expert witnesses, who expressed the view that the Doromar was properly manned with but three men. The experience of one of these experts related to ships whose engines could be controlled from the wheelhouse. He testified that he would not require the engineer to stand wheel watches. Plaintiff's second expert witness agreed that on

vessels where there was no control of the engines from the wheelhouse, there was always an engineer on watch in the engine room, and on the necessity of maintaining a lookout particularly with poor visibility. It was his view that the men could stand continuous watches for 37 hours at the time. Plaintiff's third expert witness admitted that he knew of no vessel of the type of the Doromar which had sailed out of Miami with a crew of only three men. All of the witnesses admitted the necessity of a constant lookout independent of the man at the wheel.[3]

The better reason and the clear weight of the opinion testimony seems to me to rest with the defendant. Even if all of such testimony had been with the plaintiff, the court would still be under the duty to judge of its credibility and arrive at its true value. For example, if the vessel had been manned by one man or by two men, I anticipate that no amount of opinion testimony could have convinced the Court that it was seaworthy. Manned as it was by only three men on a voyage requiring more than four days on this lane travelled by many other ships, with no control of the engines from the wheelhouse, with the factual testimony undisputed, and with the expert opinion testimony differing as has been described, I am left with the definite and firm conviction that the Doromar was not insured under appellant's policy on the voyage on which she was lost, because of breach of the policy warranty of seaworthiness.

It seems to me that this decision tends toward a dangerous relaxation of the high standard of seaworthiness essential to prudent and safe navigation. I, therefore, respectfully dissent.

Rehearing denied; RIVES, Circuit Judge, dissenting.

---

3. See 33 U.S.C.A. § 147a [Rule 29]; Chamberlain v. Ward, 21 How. 548, at pages 570–571, 62 U.S. 548, 16 L.Ed. 211; The Ariadne, 13 Wall. 475, at page 478, 80 U.S. 475, 20 L.Ed. 542; The Ot-tawa, 3 Wall. 268, 70 U.S. 268, 18 L.Ed. 165; The Orion, 1 Cir., 26 F.2d 603; The Genesee Chief, 12 How. 443, at page 462, 53 U.S. 443, 13 L.Ed. 1058.