**394**

**UNITED STATES v. BLACK et al.**
**No. 3085.**

Circuit Court of Appeals, First Circuit.
March 11, 1936.

J. Frank Staley, of Washington, D. C.
(John D. Clifford, Jr., U. S. Atty., of Portland, Me., on the brief), for appellant.

Albert T. Gould, of Boston, Mass.
(Harry C. Wilbur, of Portland, Me., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is a case of collision between the two-masted schooner Oakwoods and United States submarine R–3. It is brought under authority of a special act of Congress, 47 Stat. 1719, c. 66, approved February 14, 1933. The District Judge held the submarine solely at fault and awarded full damages to the libelant. The government has appealed.

The collision occurred after dark in the evening of November 24, 1919, in the upper end of Buzzards Bay just outside the entrance to the dredged channel leading into the Cape Cod Canal. It was a clear dark night. The submarine had come out through the channel and was getting ready to anchor for the night in the upper part of the Bay. The schooner was coming up the Bay bound through the Canal; her master intended to anchor for the night to the south and west of the entrance channel. At the time of the collision she was going to windward on the port tack with slightly started sheets heading about north northwest; there was a moderate breeze and she was making about four miles per hour. The submarine after leaving the entrance channel proceeded about southwest by south. The collision occurred nearly in line with the channel if extended and perhaps one-third of a mile outside the end of it. The schooner's course took her across the submarine's bow from left to right, and the submarine struck her on the starboard side. The schooner sank almost immediately.

The schooner was, of course, the privileged vessel, whose duty it was to keep her course and speed. It was the duty of the submarine to keep out of her way. The only excuse advanced for the submarine's failure to do so is that the schooner was not showing a proper green side-light. The schooner's navigation is criticized by the defendant at many points, beginning as far away as Long Island Sound and the watch kept during the preceding night. But the only question is whether she was showing a proper green side-light at the time of the collision. Her master's testimony was that he was running the schooner with only one other man; that both of them were on deck for some time before the accident; that he was steering and the sailor was forward on lookout; that the lights of the submarine were noticed before she came out of the channel several miles distant and were under observation from that time until the collision; that two or three times during this interval the lookout inspected the schooner's lights and reported them as all right, the last time only a few minutes before the collision; that the schooner kept her course and the submarine ran into her and sank her. When the case came up for trial, sixteen years after the accident,

all trace of the sailor had been lost; he could not be found to testify. The schooner's case rests therefore on the testimony of her master alone. The District Judge saw no sufficient reason to reject it.

There were two officers in the conning tower of the submarine as she came out of the entrance channel, and about that time a third man came up from below whose duty it was to assist in anchoring her. The attention of all of them was probably directed to preparations for anchoring. A fourth man was on deck but not where he could see ahead. There was nobody at all on the submarine who had the assigned duty of lookout. The schooner was not discovered on board the submarine until the latter's bow light reflected on her sails. The vessels were then so close together that collision was unavoidable.

It is strongly pressed upon us that if the schooner's green light had been properly burning, one of the two officers or Eliot, the third man, must have seen it; and the fact that they did not do so outweighs the interested and uncontrolled testimony of the schooner's master. This is the only disputable point in the case. That the schooner's light was burning is clear. The defendant's answer states that: "Immediately after sighting the sails, the schooner's starboard light was made out burning very dimly." There is a similar notation in the submarine's logbook. We are not impressed by the effort made at the trial to disaffirm and repudiate these statements.

The final question therefore is whether the light though burning was not burning properly; and the only evidence against the libelant on this point is the failure of the men on the submarine to notice the light earlier and their testimony that it was burning dimly. On the latter point, as the District Judge observed, a judgment of the brightness of such a light made under the stress and excitement of impending collision, which might endanger the submarine as well as the other vessel, cannot be accorded much weight. Moreover, the green light was observed in the glare of the submarine's bow light—her officers spoke of reflections from the bow light on the green glass of the side-light—which would tend to make it look dim. The failure of men, who had no special duty of lookout and whose attention was otherwise engaged, to notice the light by no means so clearly outweighs the other evidence as to require us to hold that the District Judge was clearly wrong in finding that light was properly burning. As he observed, there were the strongest possible reasons why the master of the schooner should look after her lights when he saw those of an approaching steamer. The fact established by the evidence from the submarine that the light was burning corroborates his testimony in a substantial way.

The small size of the schooner's crew did not in any way enter into the accident; it would have made no difference if there had been twenty men on her deck. We agree with the District Judge that the schooner was free from fault.

The absence of an assigned lookout on the submarine in such crowded waters at night cannot be regarded as other than a grave fault. It probably caused the accident. Dahlmer v. Bay State Dredging & Contracting Co. (C.C.A.) 26 F.(2d) 603; The Arthur M. Palmer (D.C.) 115 F. 417.

The decree of the District Court is affirmed, with costs.