## J. RICH STEERS, Inc. v. THE MOGUL. THE H. S. 51.

### No. 16922.

District Court, E. D. New York.

Dec. 3, 1946.

Decree Affirmed May 20, 1948.

See 168 F.2d 875.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for libellant.

Hagen & Eidenbach, of New York City (Charles W. Hagen, of New York City, of counsel), for claimant.

INCH, District Judge.

This is a suit in admiralty. J. Rich Steers, Inc., owns the scow H. S. 51. It sues the dredge Mogul (Great Lakes Dredge and Dock Company, claimant) claiming that the scow 51 was sunk by negligence of those in charge of the Mogul. The master of the 51 lost some of his personal effects by the sinking of the scow. Answer, with usual denials, was interposed and the trial held.

The location of this accident was in the barge basin, under construction, at the New York Navy Yard, Brooklyn. The space in which the scows and other vessels had to move in the course of work was somewhat confined. The dredge Mogul was dredging from time to time on certain designated "cuts" and had alongside a large and heavy steel scow, which, for convenience, I shall hereafter refer to as the "dumper scow." At the time in question, about 1:30 in the early morning of December 24, 1942, libellant's scow 51 was moored with her starboard side to the south wall of the aforesaid barge basin. Outside of her, with lines running to the 51, was moored libellant's scow 56. This scow had a derrick on board. According to her captain the starboard side of the 51 was several feet away from the side of the wall. This wall consisted of a concrete bulkhead from which some wooden sheathing had been removed, but there still remained several protruding timbers (called caps) from the outer surface of the wall which had not yet been sawed off.

I do not find that this location made the position of the 51 essentially a dangerous berth. It also provided convenient access to those who came to work on the 56, as well as to the captain of the 51, who lived on the 51. In the sinking of the 51, he lost some of his personal effects.

There does not seem to me to be any real doubt but that the starboard side of

the 51 was brought into contact with one or more of these protruding "caps" on the side of the wall and that this put such a hole in the side of the 51, that thereafter she filled and sank. The issue is, what caused such contact.

Counsel for claimant, among other things, argues that the 51 was a very old wooden boat, unable to stand usual wear and tear, and that for several days she had rolled against the 56 and the wall, in the operation of the derrick on the 56, and that this continual operation was the cause of the sinking.

As to this, the evidence shows that while the 51 was somewhat old, nevertheless, according to the witnesses, she was at the time in question seaworthy and in good condition, and when the captain of the 51 returned to his home on the 51 about 10 o'clock in the evening of December 23, he saw nothing out of the way and went to bed. He was sound asleep when the accident later occurred. About 12 o'clock midnight, workers on the 56 came to work, they crossed the 51 to get to the 56, and saw nothing out of the way with the 51.

Accordingly, I find that the accident to the 51 was not the result of ordinary wear and tear which she must be able to withstand, nor was the operation between the 56 and the 51 an adequate explanation for the sudden sinking of the 51.

This brings us to the real issue, which is whether or not there was a collision between the dump scow alongside the dredge Mogul and the scow 56. Any such collision is denied by counsel for claimant, based on the testimony of its witnesses. That there was such a collision, I think is adequately shown by the witnesses for libellant.

We have therefore a situation where those in charge of the Mogul brought the dump scow, which it had alongside, into collision with the 56 which in turn was lying alongside the 51, causing the 51 to be thrust against the side of the wall from which protruded these "caps". The Mogul and her dump scow were moving at the time while the 56 and the 51 were lying moored with reasonable safety alongside the wall. Dahlmer v. Bay State Dredging & Contracting Co., 1 Cir., 26 F.2d 603–605.

Apparently there was no lookout on the dump scow, although the Mogul had a lookout on her bow and stern. About 1:30 in the morning of December 24, the Mogul had completed her work on a certain "cut" and proceeded to another. In doing this she had to proceed quite near the moored scows 56 and 51. She blew her whistle and proceeded towards this other "range". This dump scow alongside of her was a large steel scow carrying a load and required care to shift in the change of location. The situation, somewhat limited as to space, the location of the moored scows 56 and 51, the necessity for exercising reasonable care in moving the dump scow past these moored scows, was plainly known, or should have been reasonably known, to those in charge of the Mogul. As the Mogul and this dump scow proceeded close to the 56 and the 51 the steel dump scow was carelessly allowed to collide with the 56, which in turn with some force thrust the 51 against the wall.

I am satisfied from the testimony of the witnesses for libellant that this is what occurred.

Thompson, who was working on the 56, saw the Mogul and her dump scow start to move, about 1:30 in the morning and testified that as the dump scow passed close to the 56 it "sheered over and hit the 56 and the blow was so hard it knocked me right off my feet". Almost immediately, he heard that the scow 51 was sinking. "We just about got the captain (of the 51 who was asleep) off, it sank in about 20 minutes".

Swansen, who was also working at that time in a small rowboat alongside the 56, testified that when he saw the Mogul and the dump scow starting to move to pass the 56, it apparently came so close that "he took this small rowboat away from the side of the 56 to get it out of the way". He also testified that the dump scow "came over and hit us, I almost lost my balance. It almost knocked me overboard, and we jumped on board (the 51) to get the lines up to hold it up, but it went too fast".

840

Olsen, another employee working on the 56, testified that he saw the dump scow hit the 56 and that the 51 sank in a few minutes.

Serviss testified that this dump scow as it passed "leaned out and just gave us a good solid blow against the scow 56".

Most of these witnesses, whose names I have given were, at the time of the trial, not working for libellant and I see no reason to doubt their veracity. In my opinion, therefore, the Mogul negligently allowed this dump scow, which she was carrying along, to collide with the moored scows 56 and 51 causing thereby the 51 to be thrust against the wall with its protruding "caps" which put such a hole in her that within a few minutes she sank.

Accordingly, libellant is entitled to a decree.

Submit findings of fact and conclusions of law.