THE ESSO NO. 302.

THE JAMES McALLISTER.

THE PROVIDENCE.

STANDARD OIL CO. OF NEW JERSEY v. THE JAMES McALLISTER et al.

DOUGHERTY CO. v. STANDARD OIL CO. OF NEW JERSEY et al.

Nos. 18029, 17925.

District Court, E. D. New York.

July 8, 1947.

Kirlin, Campbell, Hickox & Keating and Joseph Arcoleo, of New York City, for Standard Oil Co. of New Jersey.

Foley & Martin and Christopher E. Heckman, all of New York City , for McAllister Bros., Inc.

William M. Smith, of New York City, and James R. Stewart, of Orange, N. J., for P. Dougherty Co.

INCH, District Judge.

The above two suits in admiralty were duly tried together, as the material facts in one were the material facts in the other. In the first suit The P. Dougherty Company, libellant, owned the barge Providence. This barge was in tow of the tug James McAllister, and was brought into collision with the barge Esso No. 302, owned by the Standard Oil Company of New Jersey. Libellant sued the Esso barge and the latter impleaded the tug James McAllister.

In the second suit the libellant, Standard Oil Company of New Jersey, owner of the barge Esso No. 302, sued the tug James McAllister.

Both libellants therefore seek to recover damages sustained by their respective barges in the aforesaid collision.

At the time of the accident this Esso barge was anchored and lying still, and she was loaded with petroleum products. The accident happened about 10 o'clock at night, February 21, 1946. The tide was strong flood, the wind was from the northwest, visibility was good and the night, while dark, was clear.

The tug James McAllister had picked up the barge Providence at the Red Hook Flats anchorage. This tug was about 120 feet long, the Providence was about 257 feet long. The barge was light and she stood out from the water some 15 feet, so that she was higher than the tug. She had a pilot house near her stern. The tug took the Providence on the tug's port side tying up to the starboard side of the barge. Accordingly, the bow of the Providence extended beyond the bow of the tug approximately 100 feet, possibly a few feet more. The course taken by the tug and the Providence caused them to pass the Robins Reef General Anchorage. As the southern part of this anchorage was being passed, the master of the tug suddenly saw ahead the black hull of the Esso barge and before he could do anything to avoid her, he caused the bow of the barge Providence to strike the port bow forward of the Esso. This collision damaged both barges.

Counsel for the tug in its brief states, "of course there is no question as to the right of the libellant, P. Dougherty Company, to recover for the damage to the barge Providence, from either the Standard Oil Company (owner of the Esso) or McAllister, or both".

However, the first issue in both suits is, whether those in charge of the tug were negligent, and, it seems to me, if the facts disclose such negligence, much of the controversy over the exact location of the Esso becomes less important, although a considerable amount of testimony was taken at the trial as to this location of the Esso and the result is argued in the subsequent briefs. It must be remembered that the tug brought the barge Providence into collision with the Esso, which at the time was lying anchored. Entirely aside, however, from any inference that might perhaps arise from such a collision, I think a decision is indicated without such inference.

In substance, the master of the tug claims that the fault for the collision was due entirely to the fact that the Esso had been anchored in the channel, without proper lights, so that she was an obstruction to him which was undisclosed by the exercise of reasonable prudence and care on his part, and that therefore the whole fault rests upon the owner of the Esso, who had so carelessly placed her in this dangerous position. In fact this was vigorously pressed, at the trial, by some of the witnesses for the tug. As to the "exact" location of the Esso at the time of the accident, the testimony of witnesses is conflicting and fails to persuade the court as to her "exact" location. The examination of all the testimony of the various witnesses, on direct and cross-examination, will indicate this result.

However, Holmes, the master of the tug, who certainly would be interested in neglecting nothing helpful to his own freedom from negligence, testified that, "the stern of the Esso was on the anchorage ground and her bow was out in the channel. I didn't notice her before I was pretty near on top of her". Witnesses for the Esso testified she was entirely on the anchorage grounds.

If the Esso had been shown by clear evidence to have been carelessly anchored in the channel, without lights, a different situation would be presented, but such is not the case. Assuming that the master of the tug is correct that her bow only was in the channel, where it had no right to be, the question of her lights and the conduct of the master of the tug becomes important to determine in finding the real cause of the collision before blaming the accident solely on the Esso, which while anchored in the anchorage grounds with proper lights was allowed to swing her bow somewhat in the channel.

Accordingly, after considering all the testimony in the case, the issue as to whether the master of the tug was negligent, seems to me to be the really important one. I think the facts show that his negligence was the sole cause for the collision. In the first place, aside from testimony of witnesses that the Esso was in the anchorage grounds, and with due respect for the testimony that she was not in such place, and assuming that the master of the tug was correct that the Esso was partly in the anchorage grounds, we, nevertheless, have all the witnesses contradicting the assertion that the Esso had no lights on board. On the contrary those witnesses that at first so

testified, one by one agreed she had lights which they "discovered" after the accident, but which they say were then dim and were not bright enough to be seen very far away, although one witness testified that he saw the lights from a considerable distance.

The real cause for this collision was that the master of the tug did not have a proper lookout who, if he had been in the place he should have been, would undoubtedly have seen these lights of the Esso in time to avoid the collision, which, apparently, was almost avoided by the tug as it was. It is plainly shown that the master of the tug, because of the obstruction of the Providence alongside and extending ahead of the tug, could not depend on what could be seen ahead, yet he had no lookout on the bow of this barge, nor did he have a lookout on the bow of the tug. On the contrary he simply placed a deckhand in the pilot house of the barge, almost 200 feet away from her bow, in spite of the fact that the vision of the master of the tug as to what would be directly ahead was so obscured. This was a case where a lookout was especially needed in a place where he could look out in time to warn the master.

Apparently the night was cold and dark, but this created a situation which ordinary care and prudence on the part of the master of the tug indicated the absolute necessity for a lookout on the bow of the barge which was some 100 feet ahead of the bow of the tug in spite of the more comfortable quarters of the pilot house at the stern of the barge. It was this plain failure to have a proper lookout therefore, that prevented the master of the tug seeing in time that he was approaching the Esso, even if her lights had been somewhat dim, a fact that is also disputed by credible witnesses. The Ottawa, 70 U.S. 268–273, 3 Wall. 268–273, 18 L.Ed. 165; Martin Marine Trans. Co. v. Jakobson & Peterson, 2 Cir., 135 F.2d 325–328; James McWilliams Blue Line v. Prospect, D.C., 60 F.Supp. 257–259. The Grace R., D.C., 66 F.Supp. 376–378.

Accordingly, this failure to have a lookout was plainly negligent on the part of the master and was, in my opinion, the proximate cause of the collision, and the owners of the tug therefore are liable for the damages to both the Providence and the Esso. I see no reason to speculate as to whether the bow of the Esso negligently contributed to the accident.

Submit findings of fact and conclusions of law, and an interlocutory decree in accordance with this decision.